**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-233


**AVODAH FARMS**, a Colorado nonprofit corporation, and
**KEENAN FITZPATRICK**, an individual
Plaintiffs,


v.


**DEBORAH O'HARA-RUSCKOWSKI**,
Individually, and in a representative capacity
for **ORDER OF MALTA, AMERICAN
ASSOCIATION, U.S.A.,** a Delaware
limited liability company, **ORDER OF
MALTA, WESTERN ASSOCIATION**,
**U.S.A.** a California nonprofit corporation,
and **ORDER OF MALTA WORLDWIDE
RELIEF MALTESER INTERNATIONAL
AMERICAS, INC.,** a Delaware foreign
nonprofit corporation.

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COME NOW Plaintiffs, Avodah Farms, a Colorado nonprofit corporation, and Keenan

Fitzpatrick, individually, by and through counsel, Messner Reeves, LLP, and for their

Complaint and Jury Demand state and allege as follows:

### PARTIES

1.      Plaintiff Avodah Farms ("Avodah") is a Colorado nonprofit corporation with its

1

principal place of business at 1130 E. Kenyon Ave., Englewood, Colorado. At all times relevant hereto, Avodah was authorized to do business throughout the United States, including but not limited to the states of Colorado and Massachusetts.

2.      Avodah is governed by a six (6) member board of directors.

3.      Plaintiff, Keenan Fitzpatrick ("Fitzpatrick"), is an individual residing at 3737 S. Ogden Street, Englewood, Colorado 80113.

4.      Fitzpatrick is Executive Director of Avodah.

5.      Defendant Order of Malta, American Association, U.S.A., is a Delaware limited liability company with a principal place of business at 1011 1st Ave, Suite 1350, New York, NY 10022. No member of this Defendant is a citizen of the state of Colorado.

6.      Defendant Order of Malta, Western Association, U.S.A., is a California nonprofit corporation, with a principal place of business at 320 Middlefield Road, Menlo Park, CA 94025.

7.      Defendant Order of Malta Worldwide Relief Malteser International Americas, Inc. is a Delaware foreign nonprofit corporation, with a principal place of business at 1011 1st Ave, Suite 1350, New York, NY 10022 (together with Defendant Order of Malta, American Association, U.S.A and Defendant Order of Malta, Western Association, U.S.A, these defendants are referred to herein as the "Malta Defendants").

8.      Defendant Deborah O'Hara-Rusckowski ("Rusckowski") is an individual who resides in Andover, Massachusetts.

9.      During the relevant times giving rise to this action, Rusckowski was a member of the Malta Board of Councillors, a Delegate, Permanent Observer for Malta at the United

Nations, and Board Member of Malteser.

10.     During the relevant times giving rise to this action, Rusckowski acted both individually and in a representative capacity on behalf of the Malta Defendants.

## JURISDICTION AND VENUE

11.     Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1391.

12.     Specifically, the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between parties. The Malta Defendants are not citizens of this state to the extent they are incorporated, nor are their members citizens of this state to the extent they are an otherwise unincorporated legal entity.

13.     Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2) and (3), as the Malta Defendants are subject to this court's jurisdiction, by virtue them conducting business in the State of Colorado. Additionally, and/or in the alternative, a substantial part of the events giving rise to the claims alleged herein occurred in Colorado and Defendants tortiously interfered with contracts which were to be performed in the state of Colorado. Those damages claimed herein relating to lost donors and partner organizations, and/or Plaintiffs' lost relationship with the Catholic Church, and specifically, with the Archdiocese of Denver, were sustained and suffered in the state of Colorado.

## GENERAL ALLEGATIONS

### Background

14.     In 2021 alone, approximately 27.6 million people globally were victims of

3

forced labor, of which 6.3 million were forced into commercial sexual exploitation. [1]

15.     Avodah was formed in February 2020. It works to restore and reintegrate women survivors of sex trafficking ("survivors") through comprehensive, Christ-centered care provided by Catholic religious sisters and faith-filled community. Avodah conducts its non-profit missionary work across the United States.

16.     The Malta Defendants are nonprofit Catholic lay organizations conducting business throughout the United States, including but not limited to the State of Colorado and the State of Massachusetts.

17.     Following its formation, Avodah began to network with individuals, organizations, and non-profits performing similar work by establishing safe homes to break longstanding cycles of abuse, shield survivors from past abusers and reintegrate survivors into safe, stable, and fulfilling lives.

18.     During the relevant times giving rise to this action, Rusckowski was a member of the Board of Councillors for the American Association of Malta, a Delegate and Special Advisor on Human Trafficking to the Ambassador for the Order of Malta at the United Nations.

19.     During the relevant times giving rise to the action, Rusckowski served on the boards of directors for one or more of the Malta Defendants. As a current and/or former board member, and/or Delegate, and/or Special Advisor for the Malta Defendants Rusckowski engaged in and continues to engage in work surrounding survivors.

20.     Defendants, through Rusckowski, partnered with and/or ventured with Avodah in Lowell, Massachusetts to further Avodah's mission of assisting survivors.

---

[1] https://www.state.gov/humantrafficking-about-human-trafficking/

4

21.     Specifically, Rusckowski utilized her network of non-profit organizations and the Catholic religious community, both in Massachusetts and Colorado, to connect Avodah to donors, partner organizations, and other like-minded charitable organizations to further Avodah's mission of serving survivors.

22.     Avodah expanded its nonprofit work nationally and contracted with several groups of religious Sisters to provide pastoral care and service for victims, in accordance with Avodah's mission.  The groups included the following Sister orders:

    a)     Sisters of St. Louis;

    b)     Passionist Sisters of St. Paul of the Cross;

    c)     The Sisters of the Nativity;

    d)     The Sisters of St. Michael the Archangel; and

    e)     The Sisters of the Eucharistic Heart of Jesus.

23.     From 2021 to present, Avodah and Fitzpatrick conducted fundraising activities and recruited donors to contribute financially to Avodah's mission.

24.     As set forth more fully herein, Avodah's dedicated mission of breaking the cycle of abuse and assisting survivors and their children with restorative, long term care and housing has been nearly destroyed by Defendants' intentional, reckless, and false statements which have defamed those who work tirelessly to provide resources to survivors.

**The Lowell Home**

25.     In 2021, Rusckowski connected Avodah and Fitzpatrick to the Oblates, a religious order seeking to sell to Avodah certain real property located at 27 Kirk Street, Lowell, Massachusetts (the "Lowell Home").

5

26.     The Lowell Home was intended to be used as safe housing for survivors, their children, and religious Sisters who had contracted with Avodah to care for the survivors.

27.     In November 2021, one or more Defendants donated $100,000.00 to Avodah to support Avodah's National Sister Model of Care Program and to train religious Sisters on the caring for survivors.

28.     In February 2022, Avodah entered into a Purchase and Sale Agreement with the Oblates and acquired all property rights to the Lowell Home in accordance with the terms of that agreement.

29.     In March 2022, one or more Defendants donated to Avodah a total of $400,000.00 to support four (4) Passionist Sisters to serve at the Lowell Home, hire and train staff for the Lowell Home; and fund  general operations for housing survivors.

30.     Additionally, Defendants arranged for The Flatley Foundation, an entity affiliated with the Malta Defendants, to donate $250,000.00 for renovation and/or construction or improvements to the Lowell Home. Plaintiffs shared with Defendants the responsibility of renovating the Lowell Home. However, Avodah was never given access to the funds for the Lowell Home renovations and/or improvement.  All control of the Flatley funds was maintained by Defendants.

31.     During renovations of the Lowell Home, Rusckowski and the Malta Defendants grew impatient with delays attributable to supply chain issues and labor shortages.

32.     Avodah confirmed with Rusckowski that payments for portions of the renovation work were coming due and subsequently, Rusckowski directed Avodah to use funds from the Malta Defendants to pay for the construction work and, once received, to use the funds

from The Flatley Foundation to reimburse the funds donated by Malta Defendants.

33.     Specifically, Rusckowski and other members of the Malta Defendants' leadership explicitly instructed Avodah to utilize the donations for renovation purposes and subsequently reconcile balances from funds provided by The Flatley Foundation.

34.     Avodah could not house survivors at the Lowell Homes on account of the ongoing renovations. Thus, Avodah continued to place the Passionist Sisters with other similar organizations that could provide the necessary training for the Sisters to grow their skills in serving survivors, in accordance with the Sisters' employment agreements and mission.

35.     Throughout this process, and after Avodah acquired all property rights to the Lowell Home, Rusckowski and the Malta Defendants' vision for the Lowell Home changed drastically. Specifically, Rusckowski desired to name the house and work with someone else to implement her vision for the home.

36.     Avodah continued to advocate that the Lowell Home be used to house survivors and their children utilizing the services of the Passionist sisters, consistent with the parties' original intent and agreement.

37.     Despite having donated significant funds to Avodah for the specific purpose of supporting Avodah's mission, Defendants possessed no legal right or property interests which would permit them to exert control or decision-making authority over the development of the Lowell Home.

38.     Despite this, Defendants through their actions, words, and conduct undertook substantial efforts to illegally force the Plaintiffs to abandon the project so Defendants could implement their new vision.

2436701.6

39.    On or about November 7, 2022, Rusckowski invited Fitzpatrick and Avodah members to Lowell, Massachusetts for a meeting to purportedly discuss progress on the renovations of the Lowell Home. The meeting was scheduled to take place at the Lowell Home between Fitzpatrick, Avodah's Director of Operations, Alexandra Tilton, Rusckowski, and Rusckowski's husband.

40.    However, when Fitzpatrick and Ms. Tilton arrived at the Lowell Home, Rusckowski, unannounced members of the Malta Defendants, and other unidentified third-parties threatened Fitzpatrick and Tilton that they could not leave the meeting until they agreed to transfer property interest in the Lowell Home to one or more of the Malta Defendants, return alleged unused restricted funds for the Lowell Home to one or more of the Malta Defendants, and agree that the Passionist Sisters would be managed by the Malta Defendants at the Lowell Home.

41.    Under extreme duress, the contractual rights under the Purchase and Sale Agreement were transferred to one or more of the Malta Defendants the unused funds for staffing of the Lowell Home and the Passionist Sisters originating from the 2022 grant from the Malta Defendants.  It was also understood an agreement was to be formed with management of the Lowell Home to transfer training and supervision of the Passionist Sisters so they could fulfill their mission of caring for survivors of the Lowell Home.  All unused funds were returned to the Malta Defendants in accordance with a reconciliation of funds by Avodah and the Controller for Malta Defendants.  However, due to the actions and inactions of Defendants, the remaining terms of the purported agreement went unfulfilled.

**Defendants' Smear Campaign**

42.     Following the November 7, 2022, meeting, Rusckowski and the Malta Defendants initiated a smear campaign against Plaintiffs. Rusckowski, utilized her influential position with the Catholic community to make knowingly false and defamatory statements to third parties that Avodah was "stealing" and "misappropriating" donor funds. Rusckowski further stated to third parties that Avodah was "labor trafficking" religious Sisters. The statements were false and/or made with reckless disregard for their falsity with the intent that they be acted upon, relied upon, and otherwise disseminated.

43.     In the winter of 2023, Defendants made oral and/or written statements to representatives of the Archdiocese of Denver that Avodah had "misappropriated" donor and investor funds and was "labor trafficking" Sisters. At the time these statements were made, Defendants knew the statements were false and made them with reckless disregard for their falsity with the intent that they be acted upon, relied upon, and otherwise disseminated.

44.     Upon information and belief, the Archdiocese of Denver relied upon these false statements providing erroneous and defamatory information about Avodah and published these false statements to numerous other third parties, including potential Avodah donors and partner organizations, causing Plaintiffs significant and severe injuries, damages, and losses.

45.     As a result of Defendants' false statements to the Archdiocese of Denver, representatives of the Archdiocese utilized local law enforcement to induce the removal of several religious Sisters who were living on Avodah property in Denver, Colorado, thereby disrupting Avodah's programming, services, and mission for survivors on the Denver campus.

46.     Defendants' actions and statements interfered with Avodah's nonprofit work by

9

2436701.6

causing the Archdiocese of Denver to disavow Avodah as a Catholic organization, causing Plaintiffs to incur significant and severe injuries, damages and losses.

47.     In February 2023, Rusckowski relayed the above defamatory statements to Kristen Meyer, an influential Catholic leader, who thereafter sent written correspondence to other third-parties stating: "If Keenan [Fitzpatrick] approached you or stewards for money or if he is an interloper in any way it's best to keep him far away. He scammed our good friends out of 500k and is ironically and sadly trafficking religious sisters.  Happy to discuss further." The statements were false and/or made with reckless disregard for their falsity. Rusckowski knew the statements were false when she made them to Ms. Meyer.

48.     On or about February 19, 2023, Rusckowski sent a group text to a network of potential Avodah donors, along with Fitzpatrick, stating that Rusckowski and Malta had cut ties with Avodah and further stating: "[u]nfortunately, the culprit is still on our "Friends of Deb" List – [Fitzpatrick] is NO friend – more demon than friend!! I will create another list for just TRUE Friends of Deb!" The statement that Fitzpatrick was a demon was false, and made with reckless disregard for its falsity, causing Plaintiffs to incur significant and severe injuries, damages and losses.

49.     In the spring of 2023, Rusckowski called a partner of Avodah and prominent third-party figure within the Catholic community and national anti-trafficking space and stated "Avodah and Fitzpatrick misappropriated funds and were labor trafficking religious sisters who Avodah employed to care for victims of sex trafficking".  The statements were false and/or made with reckless disregard for their falsity. At the time the statements were made, Rusckowski knew the statements were false.

2436701.6

50.     Rusckowski told this individual that he should disassociate himself from Avodah and Fitzpatrick. Upon information and belief, it was made clear to this third-party that the purpose of Rusckowski's call was to induce this third-party and others to avoid any involvement with Plaintiffs.

51.     Rusckowski later sent correspondence to this individual reaffirming the previous phone conversation for the purpose of dissuading him and his network from donating to or otherwise involving themselves with Plaintiffs.

52.     The Defendants' defamatory statements interfered with Avodah's nonprofit work by causing the religious Sisters to be erroneously concerned about the status of their work visas and to erroneously believe their work visas were in jeopardy.

53.     Rusckowski's actions and statements interfered with Avodah's nonprofit work by inducing several religious Sister organizations to terminate their employment agreements with Avodah.

54.     Rusckowksi's statements interfered with Avodah's nonprofit work by spreading false information about Avodah and its employees with the intent that donors would not fulfill their financial commitments to Avodah.

55.     As a direct result of Rusckowski's false statements, donors and partner organizations who had pledged, or planned to pledge, financial commitments to Avodah, withdrew their donations and/or commitments, thereby causing Plaintiffs to incur substantial injuries, damages, and losses.

56.     Throughout the foregoing, Plaintiffs had entered into discussions with prospective donors concerning millions of dollars in donations that were intended for Avodah

and its mission of caring for survivors. As a result of Defendants' coordinated smear campaign and false statements, at least one donor ceased raising funds worth hundreds of thousands of dollars that were intended to be donated to Avodah for the benefit of survivors served by Avodah. As a result of Defendants' coordinated smear campaign and false statements, Plaintiffs suffered injuries, damages, and losses, in the form of millions of dollars in withdrawn donations and fundraising for projects intending to benefit Avodah.

57.     As a direct result of Defendants' smear campaign and false statements, various community organizations have shunned Avodah and disallowed Avodah's attendance and participation at seminars, conferences and other prominent activities pertinent to Plaintiffs' livelihood and operations.

58.     In July 2023, the Napa Institute, a high-powered, prominent organization dedicated to the formation and preparation of Catholic leadership, disinvited Avodah from its 13th annual summer conference due to a "pending shadow" caused by the defamatory statements made by or on behalf of Defendants within the community.

59.     In January 2024, FOCUS, a prominent Catholic outreach organization, sponsored its annual SEEK Conference in Saint Louis, Missouri. As a direct result of the defamatory statements made by Defendants, Fitzpatrick was publicly removed from the presence of friends, donors, and priests from the partner track of the conference.

60.     As a result of the Defendants' false statements and improper conduct, Plaintiffs continue to suffer injuries and damages today, including harm to reputation, economic and non-economic damages.

## **FIRST CAUSE OF ACTION**
### **(Defamation of Avodah)**

61.     Plaintiffs allege and incorporate herein each and all of the allegations of paragraphs 1 through 60, inclusive.

62.     Defendants published false written and/or verbal statements to third-parties regarding Avodah, specifically that it was "labor trafficking" religious Sisters.

63.     Defendants published false written and/or verbal statements to third parties about Avodah, specifically that it had stolen and misappropriated grant funds.

64.     Defendants published false written and/or verbal statements to third parties about Avodah, specifically that it had perpetrated crimes and had been federally charged with "labor trafficking" religious Sisters.

65.     Defendants published other false written and/or verbal statements to third-parties about Avodah which materially affected Avodah's operations and fundamentally hindered its mission.

66.     The published statements harmed Plaintiffs' reputation by lowering Plaintiffs in the estimation of at least a substantial and respectable minority of the community.

67.     The statements published by Defendants about Avodah were false and/or made with reckless disregard for their falsity.

68.     The statements published by Defendants about Avodah were made with actual malice.

69.     The statements published by Defendants about Avodah equate to statements about the commission of a crime and are defamatory per se.

70.     As a direct, proximate, and foreseeable result of Defendants' defamatory

statements, and the repetition thereof by third parties, Avodah has incurred and will continue to suffer injuries, damages and losses including but not limited to economic and non-economic harm, special damages, reputational harm in the community, cost and expense in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Defamation of Fitzpatrick)**

71.     Plaintiffs allege and incorporate herein each and all of the allegations of paragraphs 1 through 70, inclusive.

72.     Defendants published false written and/or verbal statements regarding Fitzpatrick to third parties, specifically that Fitzpatrick was "labor trafficking" religious Sisters.

73.     Defendants published false written and/or verbal statements regarding Fitzpatrick to third parties that Fitzpatrick was a "demon".

74.     Defendants published false written and/or verbal statements to third parties that Fitzpatrick stole and "misappropriated grant funds."

75.     Defendants published false written and/or verbal statements to third parties that Fitzpatrick had perpetrated crimes.

76.     The published written and/or verbal statements of Defendants were made to third parties and entities working directly with Fitzpatrick personally, as well as donors and partner organizations of Avodah.

77.     The statements published by Defendants were false and/or made with reckless disregard for their falsity.

78.     The published statements harmed Fitzpatrick's reputation by lowering him in the estimation of at least a substantial and respectable minority of the community.

14

2436701.6

79.     The statements published by Defendants were made with actual malice.

80.     The statements published by Defendants equate to statements about the commission of a crime and are defamatory per se.

81.     As a direct, proximate, and foreseeable result of Defendants' defamatory statements, and the repetition thereof by third parties, Fitzpatrick has incurred and will continue to suffer injuries, damages and losses including but not limited to economic and non-economic harm, special damages, reputational harm in the community, cost and expense in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
#### (Negligence)

82.      Plaintiffs allege and incorporate herein each and all of the allegations of paragraphs 1 through 81, inclusive.

83.     Defendants had a duty to act reasonably when communicating about Plaintiffs with third parties. Defendants had a duty to act reasonably when discussing Fitzpatrick and Avodah, its mission, its employment practices, and its finances with others.

84.     Defendants breached that duty by failing to exercise reasonable care when acting and communicating with third parties about Fitzpatrick and Avodah, its mission, its employment practices, and its finances.

85.      Defendants' failure to use reasonable care in their actions and discussions about Fitzpatrick and Avodah Plaintiffs have incurred and will continue to suffer injuries, damages and losses including but not limited to economic and non-economic harm, cost and expense in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Contract)

86.     Plaintiffs allege and incorporate herein each and all of the allegations of paragraphs 1 through 85, inclusive.

87.     Avodah maintained employment contracts with the Sisters for their work with Avodah.

88.     Defendants knew about the contracts between Avodah and the religious Sisters.

89.     Defendants' statements and actions, as described herein, were improper and intended to induce the Sisters to break their employment contracts with Avodah.

90.     Defendants used improper methods and/or had improper motives when they interfered with the employment contracts of the Sisters and Avodah, specifically causing the Sisters concern for their employment and/or visa status through the dissemination of erroneous information about the status of their international work visas.

91.     Some of the Sisters terminated their employment contracts with Avodah due to Defendants' improper interference.

92.     Defendants' words and conduct caused Avodah to suffer damages, including but not limited to loss of past and future income, loss of contractual benefits with third parties, loss of business opportunity, reputational harm in the community, cost and expense in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Tortious Interference with Prospective Business Relations)

93.     Plaintiffs allege and incorporate herein each and all of the allegations of paragraphs 1 through 92, inclusive.

16

2436701.6

94.     Plaintiffs had developed advantageous prospective business relationships with third-party donors and partner organizations.

95.     Defendants knew about Plaintiffs' prospective business relationships with third parties, including donors and partner organizations, which would benefit Plaintiffs in performing its nonprofit mission.

96.     Through their words and conduct described herein, Defendants intentionally and improperly induced or otherwise caused third parties, including donors and prospective partner organizations, to discontinue prospective relations and contractual arrangements with Plaintiffs.

97.     Through their words and conduct described herein, Defendants prevented Plaintiffs from acquiring or continuing prospective relationships with third parties, including donors and partner organizations.

98.     As a direct, proximate, and foreseeable result of Defendants' tortious interference with Plaintiffs' business relationships and prospective business relationships, Plaintiffs and have incurred and will continue to incur injuries and damages including but not limited to loss of past and future income, loss of contractual benefits with third parties, loss of business opportunities, reputational harm in the community, cost and expense.

## SEVENTH CAUSE OF ACTION
### (Extreme and Outrageous Conduct – Fitzpatrick)

99.     Plaintiffs allege and incorporate herein each and every allegation set forth in paragraphs 1 through 98, inclusive.

100.    Defendants' actions and statements, individually, and collectively as a course of

17

conduct, were so outrageous in character and so extreme in degree that a reasonable member of the community would regard them as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

101.    Defendants' actions and statements, individually, and collectively as a course of conduct, would arouse resentment against Defendants among reasonable members of the community and lead members of the community to conclude the conduct and statements of Defendants were extreme and outrageous.

102.    Defendants' actions and statements were reckless and performed with the intent of causing Fitzpatrick severe emotional distress.

103.    As a direct, proximate, and foreseeable result of Defendants' extreme and outrageous conduct, Fitzpatrick has incurred and will continue to incur injuries and damages including but not limited to loss of past and future income, loss of contractual benefits with third parties, loss of business opportunity, reputational harm in the community, cost and expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment on all causes of action against Defendants and for all applicable damages according to proof, including but not limited to economic and non-economic damages, special damages, attorneys' fees, costs, expenses, and interest in accordance with law and such other and further relief as the Court may deem proper.

## JURY DEMAND

**Plaintiffs demand a jury for the trial of this action on all matters so triable.**

2436701.6

Respectfully submitted this 25th day of January, 2024.

By:  *s/ M. Caleb Meyer*
M. Caleb Meyer, Esq.
Adam M. Royval. Esq.
Emilie C. Lorden, Esq.
**MESSNER REEVES LLP**
1550 Wewatta Street, Suite 710
Denver, CO 80202
Telephone: (303) 623-1800
*Attorneys for Plaintiffs, Avodah Farms and*
*Keenan Fitzpatrick*

19