## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:24-cv-00233-NYW-MEH

**AVODAH FARMS**, a Colorado nonprofit corporation, and
**KEENAN FITZPATRICK**, an individual

        Plaintiffs,

v.

**DEBORAH O'HARA-RUSCKOWSKI**,
Individually, and in a representative capacity
for **ORDER OF MALTA, AMERICAN
ASSOCIATION, U.S.A.**, a Delaware
limited liability company, **ORDER OF
MALTA, WESTERN ASSOCIATION,
U.S.A.**, a California nonprofit corporation,
and **ORDER OF MALTA WORLDWIDE
RELIEF MALTESER INTERNATIONAL
AMERICAS, INC.**, a Delaware foreign
nonprofit corporation.

        Defendants.

_____

## DEFENDANT DEBORAH O'HARA-RUSCKOWSKI'S
## SPECIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT
_____

## <u>INTRODUCTION</u>

In its concurrently filed Motion To Dismiss under Federal Rule of Civil Procedure

12(b)(6), Defendant Deborah O'Hara-Rusckowski asserts that all of the claims filed by

Plaintiffs Avodah Farms ("Avodah") and Keenan Fitzpatrick ("Fitzpatrick") (collectively,

"Plaintiffs") fail as a matter of law.  In this Motion, Ms. O'Hara-Rusckowski seeks relief

because Plaintiffs have improperly filed a strategic lawsuit against public participation, or

"SLAPP" action in violation of Colorado's anti-SLAPP statute.  *See* Colo. Rev. Stat. § 13-

20-1101.  Ms. O'Hara-Rusckowski thus requests that the Court dismiss Plaintiffs' lawsuit

with prejudice and award Ms. O'Hara-Rusckowski attorneys' fees and costs incurred in connection with responding to this lawsuit.

## CONFERRAL WITH OPPOSING COUNSEL

Counsel for Ms. O'Hara-Rusckowski has conferred with counsel for Plaintiffs, Avodah Farms ("Avodah") and Keenan Fitzpatrick ("Fitzpatrick") (collectively, "Plaintiffs"), on multiple occasions regarding this Motion to Dismiss pursuant to this Court's policies and D.C. Colo. L. Civ. R. 7.1(a), including on or about April 9, May 24, May 27, and June 5, 2024.

## LEGAL STANDARD

Colorado's anti-SLAPP statute applies in federal court. *See, e.g., Timmins v. Henderson*, No. 122CV00754CNSSBP, 2024 WL 1215617, at *2 (D. Colo. Mar. 21, 2024). "The statute's purpose is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Timmins*, 2024 WL 1215617, at *2 (internal quotations omitted). "To balance these competing interests, § 13-20-1101 provides a 'special motion to dismiss' to quickly weed out frivolous suits intended to chill speech about matters of public concern." *Id.*

Courts evaluating a Colorado anti-SLAPP motion to dismiss do so pursuant to a "two-step" inquiry. *See id.* at *3. The Court must first determine "whether the claim arises from an action in furtherance of the defendant's right of petition or free speech in connection with a public issue." *See id.* If so, the Court will then "consider the pleadings and the supporting and opposing affidavits to determine whether the nonmoving party (the plaintiff) has established a reasonable likelihood of success on his claim." *Id.*

## ARGUMENT

**I.**    **Step 1: Plaintiffs' Claims Arise Out of Constitutionally Protected Activity**

The first step in this anti-SLAPP inquiry requires Ms. O'Hara-Rusckowski to show

that "the conduct underlying" Plaintiffs' "claim[s] falls within the scope of the anti-SLAPP

statute."  *See Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d

1122, 1134 (D. Colo. 2022) (cleaned up).  This step "is not particularly demanding" and

is satisfied where "any portion of a claim [has] even minimal merit within the meaning of

the anti-SLAPP statute."  *See id.* at 1134-35 (internal quotations omitted).  This

requirement is unquestionably established here.

Colorado's anti-SLAPP statute applies to "[a]ny . . . conduct or communication in

furtherance of the exercise of the constitutional right of petition or the constitutional right

of free speech in connection with a public issue or an issue of public interest."  C.R.S. §

13-20-1101(2)(a)(IV).  In evaluating whether step 1 is satisfied under this catch-all, courts

may consider jurisprudence on California's "substantively identical" anti-SLAPP statute,

which "the Colorado Court of Appeals has directed courts" to consider in "construing

Colorado's own anti-SLAPP statute."  *See, e.g., Moreau*, 641 F. Supp. 3d at 1132; *see

also, e.g., Rosenblum v. Budd*, 538 P.3d 354, 363 (Colo. App. Ct. 2023) (relying on

*FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1161 (Cal. 2019) in interpreting

C.R.S. § 13-20-1101(2)(a)(IV)).

The catch-all provision "extends the anti-SLAPP statute[] . . .  to all conduct in

furtherance of the exercise of the right of free speech in connection with a public issue."

*FilmOn.com Inc.,* 439 P.3d at 1161-62 (cleaned up).  That expressly includes "private

communications concerning issues of public interest."  *See id.* (internal quotations

omitted).  In evaluating its application, courts may consider "contextual clues" such as

"the audience of the speech," "the public interest" in the topic of the communication, and "whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants." *See id.* (cleaned up) (aggregating law).

The California Court of Appeal's opinion in *Terry v. Davis Community Church* is illustrative. *See* 33 Cal. Rptr. 3d 145 (Cal. App. Ct. 2005). In that case, the plaintiffs asserted defamation and infliction of emotional distress based on the claim that they had "an inappropriate sexual relationship with a minor female in their work as church youth group leaders." *See id.* at 147. In evaluating the subsequent anti-SLAPP motion, the court emphasized that it did not matter whether the allegation was made publicly, or even whether the allegation was ultimately accurate. *See id.* at 152, 55. The private allegations satisfied the catch-all provision of the anti-SLAPP statute because they related to an obvious matter of public interest—the protection of minors. *See id.* at 154. Indeed, the matter was even referred to the police for investigation, even though the police ultimately did not find sufficient evidence of a crime. *See id.*

However, "[t]he topic of discussion need not be significant or affect society as a whole." *See Vann v. Nunn*, No. G060498, 2023 WL 3088294, at *6 (Cal. App. Ct. Apr. 26, 2023). It is enough that the topic is "of interest to a definable subgroup of society, such as a school, church, homeowners' association, or labor union." *Id.* (aggregating authority). For instance, allegations of misappropriation are relevant to discrete communities, such as a church with only 550 members. *See Grenier v. Taylor*, 183 Cal. Rptr. 3d 867, 876 (Cal. App. Ct. 2015); *see also, e.g., Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1122 (9th Cir. 2017) (organization's mismanagement of financial resources).

There is also a public interest in protecting employees from misconduct, including but not limited to abuse, bullying, and harassment. *See Hicks v. Richard*, 252 Cal. Rptr. 3d 578, 586 (Cal. App. Ct. 2019).

Ms. O'Hara-Rusckowski's alleged statements fall within the ambit of Colorado's anti-SLAPP statute. While the communications were not disseminated publicly, Plaintiffs allege that Ms. O'Hara-Rusckowski communicated her concerns to leaders in the American-Catholic community that were in the best position to protect Sisters, Catholic institutions and NGOs, and the donating public. *See* Compl. ¶ 43 (Archdiocese of Denver); ¶ 47 ("influential Catholic leader"); ¶ 48 ("network of . . . donors); ¶ 49 ("prominent third-party figure within the Catholic community and national anti-trafficking space"). The "audience of the speech" thus reflects that the "private communications" nevertheless "concern[ed] issues of public interest." *See FilmOn.com Inc.,* 439 P.3d at 1161-62.

The topic of the communication also unquestionably implicates matters of public concern. The Catholic and anti-trafficking communities have an interest in deciding whether to allocate their time, efforts, and monetary resources to an organization that is suspected of misappropriating charitable donations and trafficking Sisters. The trafficking allegations are also of particular importance to the public as a whole, Sisters throughout the world that may consider working for Plaintiffs, and Sisters currently employed by Plaintiffs. *See Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1034-35 (10th Cir. 2013) (allegations of "human trafficking" related to matters of public concern and would interest "current and potential employees, business owners, and government officials.").

A statement also implicates the public concern where it attracts the attention of government officials. *See id; see also, e.g., Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 42 (Colo. App. Ct. 1996) (citing *Brueggemeyer v. Am. Broad. Companies, Inc.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988)). And, here, Plaintiffs affirmatively alleged that local law enforcement in Colorado acted upon the accusation that Plaintiffs were engaged in labor-trafficking. *See* Compl. ¶ 45. That itself demonstrates sufficient public interest.

However, Plaintiffs are *also* currently under a federal criminal investigation led by the U.S. Attorney's Office for the District of Massachusetts. *See* Declaration of Sarah Krissoff ("Krissoff Decl."), at ¶ 5, attached hereto as **Exhibit A**. Upon information and belief, the scope of that investigation includes the same topics addressed in this lawsuit, including Plaintiffs' purported work assisting human trafficking survivors, Plaintiffs' involvement in the Lowell Home, Plaintiffs' treatment of religious sisters who traveled to the United States to assist with the care of human trafficking survivors, and the November 2022 meeting where Mr. Fitzpatrick agreed to discontinue his involvement with the Lowell Home, among other topics. *Id.* at ¶ 6. Ms. O'Hara Rusckowski has testified, under oath, before a grand jury, regarding the these topics. *Id.* at ¶ 7.

The statements giving rise to Plaintiffs' lawsuit thus implicate the public interest as they concern, *inter alia,* the public as a whole, Plaintiffs' current and future employees, individuals and entities within the Catholic community that may contemplate donating to or partnering with Plaintiffs, and the government agencies investigating Plaintiffs. That the alleged statements were made in private does not change this conclusion under the anti-SLAPP statute's catch-all provision. Ms. O'Hara-Rusckowski has thus met the "not

particularly demanding" showing required to satisfy the first step of this Court's anti-SLAPP inquiry.  *See Moreau*, 641 F. Supp. 3d at 1134.

## II. __Step 2: Plaintiffs Cannot Establish a Reasonable Likelihood of Success on Any of its Claims__

The burden thus shifts to Plaintiffs, who must establish "a probability" of prevailing on "each element" of their causes of action.  *See Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012).  In deciding whether Plaintiffs have met their burden, this Court "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." § 13-20-1101(3)(b); *accord Timmins*, 2024 WL 1215617, at *3.  This Court "should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (internal quotations omitted).

This Motion "mounts a legal challenge" to the sufficiency of Complaint, such that it is governed by Federal Rule of Civil Procedure 12(b)(6).  *See Moreau*, 641 F. Supp. 3d at 1133.  For the reasons discussed in Ms. O'Hara-Rusckowski's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), which is incorporated herein by reference, Plaintiffs have failed to state plausible claims for defamation, negligence, tortious interference, and extreme and outrageous conduct.  This Court should grant Ms. O'Hara-Rusckowski relief under Colorado's anti-SLAPP statute as a result.

## **CONCLUSION**

For the foregoing reasons, Ms. O'Hara-Rusckowski respectfully requests that the Court grant her Special Motion to Dismiss under Colo. Rev. Stat. § 13-20-1101 and award her attorneys' fees and costs incurred in connection with responding to, and obtaining dismissal of, this lawsuit.  Ms. O'Hara-Rusckowski requests the opportunity to file a separate fee request and supporting documentation within fourteen (14) days of the Court's decision on this Motion.

Respectfully submitted,

COZEN O'CONNOR

By:  *s/ Arianna K. McLaughlin*
Sarah Krissoff
Arianna K. McLaughlin
Joseph E. Okon
Cozen O'Connor
3 WTC
175 Greenwich St. 55th Floor
New York, New York 10007
Phone: (212) 908-1388
skrissoff@cozen.com
amclaughlin@cozen.com

*Attorneys for Deborah O'Hara-Rusckowski*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically through the CM/ECF

system on June 20, 2024, which will provide notice to all counsel of record.


*/s/ Arianna K. McLaughlin*
Arianna K. McLaughlin