**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-233

**AVODAH FARMS**, a Colorado nonprofit corporation, and
**KEENAN FITZPATRICK**, an individual
Plaintiffs,

v.

**DEBORAH O'HARA-RUSCKOWSKI**, an individual
Defendant.

---

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

COME NOW Plaintiffs, Avodah Farms, a Colorado nonprofit corporation, and Keenan

Fitzpatrick ("Plaintiffs"), individually, by and through their counsel Messner Reeves, LLP, and

submit this Opposition to Defendant Deborah O'Hara-Rusckowski's Motion to Dismiss

Plaintiff's Amended Complaint. (ECF 84) ("Motion").

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

LEGAL STANDARD ................................................................................................................1

ARGUMENT ..............................................................................................................................2

   I.    This Court has subject matter jurisdiction over the First Amended Complaint. ..............2

   II.   The First Amended Complaint states viable claims for defamation................................4

     A.   The FAC pleads all alleged defamatory statements against Rusckowski with sufficient specificity....................................................................................................................................4

          1. To plead a defamation claim, a complaint need only present a short and plain statement providing sufficient notice of the alleged defamatory statement……….4

          2. The FAC easily meets and far exceeds the requirement that it present a short and plain statement providing sufficient notice of the alleged defamatory statement…..7

     B.   The FAC alleges defamatory statements of fact, not opinion. .....................................11

     C.   The FAC sufficiently pleads material falsity and actual malice. .................................14

          1. The FAC sufficiently pleads material falsity………………………………….14

          2. The FAC sufficiently pleads actual malice………………………………….21

   III.  The First Amended Complaint states viable claims for intentional interference. ..........23

     A.   The FAC states a viable claim for intentional interference with a contract.................25

          1. The FAC sufficiently pleads Rusckowski's knowledge of Plaintiffs' contracts with the religious Sisters……………………………………………………………….25

          2. The FAC sufficiently pleads Rusckowski's intentional and improper contract interference………………………………………………………………………26

          3. The FAC sufficiently pleads causation………………………………………...28

     B.   The FAC states a viable claim for intentional interference with prospective business relations....................................................................................................................................29

          1. The FAC sufficiently pleads Rusckowski's knowledge of Plaintiffs' prospective business relations……………………………………………………………………...30

          2. The FAC sufficiently pleads Plaintiffs' reasonable likelihood of forming prospective business relations……………………………………………………31

          3. The FAC sufficiently pleads Rusckowski's intentional and improper interference with Plaintiffs' prospective business relations…………………………………31

          4. The FAC sufficiently pleads causation………………………………………...33

   IV.  The First Amended Complaint states a viable claim for extreme and outrageous conduct.

...................................................................................................................................34

CONCLUSION.....................................................................................................................35

CERTIFICATE OF SERVICE ............................................................................................37

## INTRODUCTION

The evidence in this case will substantiate Plaintiffs' allegations and establish all elements of Plaintiffs' claims. Here at the pleadings stage, however, and in ruling on Rusckowski's pleadings Motion, this Court need not address the parties' competing factual accounts. This Court's analysis on Rusckowski's Motion is instead simple and straightforward.

Accepting all factual allegations in the First Amended Complaint as true and construing all reasonable inferences in Plaintiffs' favor, as federal procedure requires, the outcome is clear: Plaintiffs' First Amended Complaint unquestionably states viable claims for defamation, intentional interference with a contract, intentional interference with prospective business relations, and extreme and outrageous conduct. This Court should deny Rusckowski's Motion.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a pleadings motion which challenges the legal sufficiency of a plaintiff's complaint, not the plaintiff's evidence. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("[A] Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). The legal standard to defeat a Rule 12(b)(6) motion to dismiss is not demanding.

Rule 8 merely requires a complaint to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "pleading standard Rule 8 announces does not require 'detailed factual allegations[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, "[t]o

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The complaint need only "plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). All reasonable inferences from a complaint's factual allegations must also be construed in the plaintiff's favor. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).

## <u>ARGUMENT</u>

**I.        This Court has subject matter jurisdiction over the First Amended Complaint.**

Ru. Ruskowski argues that this lawsuit presents a religious dispute precluding this Court's subject matter jurisdiction. (ECF 84, pp. 12-14.) This argument fails. The First Amendment in no way precludes this Court's subject matter jurisdiction over a secular lawsuit such as this.

The Archdiocese of Denver (Archdiocese) is not a party to this lawsuit. Plaintiffs assert no legal challenge to the Archdiocese's decision to disavow Avodah, nor any legal challenge to any conduct or decision by the Archdiocese at all. The lawsuit instead pertains to Ruskowski's secular efforts as a private individual, not as a religious official, to tarnish the public standing of Plaintiffs through knowingly false and defamatory statements.

Secular legal standards control this Court's inquiry in determining whether Ruskowski's secular statements and conduct result in actionable claims for defamation,

intentional interference, and extreme and outrageous conduct. In adjudicating this lawsuit, this Court will "judge nothing to be heresy, support no dogma, and acknowledge no beliefs or practices of any sect to be the law." *John Doe (1) v. Archdiocese of Denver*, 413 F. Supp. 2d 1187, 1194-95 (D. Colo. 2006) (quoting *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 431 (2d Cir. 1999)). Adjudicating this lawsuit also will not "endorse or inhibit[] religion[]"as its "principal or primary effect[.]" *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1260 (10th Cir. 2005) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971)). Further, while the First Amendment protects from judicial review issues involving: (1) a church's law and doctrine, *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976); (2) a church's religious mission, *Hernandez v. Comm'r Inter. Rev.*, 490 U.S. 680, 699 (1989); and (3) a church's polity, administration, and community, *Milivojevich*, 426 U.S. at 709-714, none of those categories apply here.

This is instead a secular lawsuit, implicating secular conduct and secular claims controlled by secular legal standards, which merely involves the Archdiocese as a factually relevant non-party religious entity. This does not preclude this Court's subject matter jurisdiction. *See General Council on Finance and Administration of the United Methodist Church v. California Superior Court*, 439 U.S. 1369, 1373 (1978) ("There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity[,]" but "[s]uch considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization[.]").

As the United Supreme Court has articulated, no First Amendment precedent "is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public." *Cantwell v. Connecticut*, 310 U.S. 296, 306, (1940). Rusckowski's secular, improper, and unlawful conduct and statements are subject to judicial review. This Court has subject matter jurisdiction over all of Plaintiffs' claims.

**II.      The First Amended Complaint states viable claims for defamation.**

Rusckowski argues that Plaintiff's First Amended Complaint (FAC) fails to state claims for defamation because, according to Rusckowski: (1) the FAC fails to plead the alleged defamatory statements with sufficient specificity (ECF 84, p. 16); (2) the defamatory statements alleged in the FAC are statements of opinion or non-literal hyperbole, not factual statements (ECF 84, pp. 15-17); and (3) the FAC fails to plead material falsity and actual malice (ECF 84, pp. 20-23.) Each argument fails, as set forth below.

**A.      The FAC pleads all alleged defamatory statements against Rusckowski with sufficient specificity.**

**1.      To plead a defamation claim, a complaint need only present a short and plain statement providing sufficient notice of the alleged defamatory statement.**

There is no heightened pleading standard for defamation claims, including defamation claims involving matters of public concern. Rather, the plausibility standard pronounced in *Iqbal* and *Twombly* applies to the pleading of defamation claims. *McDonald v. Wise*, 769 F.3d 1202, 1210 , 1219-20 (10th Cir. 2014) (applying *Iqbal* and *Twombly* plausibility standard to conclude that a complaint stated a viable defamation claim to defeat a Fed. R. Civ. P. 12(b)(6) motion to dismiss, including sufficient pleading of actual malice for a statement involving a matter of public concern); *see also, e.g., Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016)

(aggregating federal circuit court authority, including *McDonald*, demonstrating that "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard" to defamation claims involving actual malice, then stating: "Joining that chorus, we hold that the plausibility pleading standard applies to the actual malice standard in defamation proceedings."). [1]

Accordingly, to plead a viable defamation claim, a complaint is only required to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662 at 678 (quotations omitted). "'[D]etailed factual allegations" are not

---

[1] Some federal district courts within the Tenth Circuit, including then-Magistrate Judge Tafoya in *Carosella*, have held that "defamation claims present a 'significant exception' to general liberal pleading standards because defamation constitutes a 'traditionally disfavored' cause of action[,]" purportedly warranting a heightened pleading standard. *Carosella v. One World Translation & Associates, Inc.*, 2017 WL 11545379, at *3 (D. Colo. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 11545380 (D. Colo. Mar. 1, 2017). This is legal error and appears to result primarily from misadvised reliance on *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997). *See, e.g., Carosella*, at *3 (citing *Heckman v. Zurich Holding Co. of America*, 2007 WL 677607, at *5 (D. Kan. Feb. 28, 2007), which cites *Bushnell*); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1271 (D. Kan. 2008) (citing *Bushnell*). The *Bushnell* court relied on an inaccurate citation to Wright & Miller for this proposition. That very Wright & Miller treatise demonstrates the error. Just two paragraphs after observing, without endorsement, that some federal district courts "have gone against the general rule that the complaint will be construed liberally on a Rule 12(b)(6) motion in the context of 'traditionally disfavored' causes of action, such as defamation[,]" that Wright & Miller treatise emphasizes the "impropriety of using a stricter pleading standard on a motion to dismiss in a disfavored action" and declares it as "antithetical to" United States Supreme Court precedent. 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (rejecting heightened pleading standard in select employment discrimination cases because it "conflicts with Federal Rule of Civil Procedure 8(a)(2)" and because "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions" such as those in Rule 9(b)); *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (rejecting heightened pleading standard in select civil rights actions as "impossible to square [] with the liberal system of 'notice pleading' set up by the Federal Rules."); Thus, to the extent Rusckowski insists on this Court applying a heightened pleading standard to Plaintiffs' defamation claims, then accepting Rusckowski's argument would defy United States Supreme Court precedent, defy Tenth Circuit precedent, further depart from federal circuit court precedent throughout the U.S., and result in reversible error in this case.

required. *Id*. Rather, to plead a defamation claim with sufficient specificity, the complaint need only present a short and plain statement to "provide sufficient notice of the communications complained of to allow [a defendant] to defend itself." *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955-56 (10th Cir. 1989).

Federal precedent instructs that this pleading standard for defamation claims is liberal and flexible. Federal district courts have consistently held that this pleading requirement does not even require a plaintiff to identify the precise defamatory statement at issue. *See, e.g.*, *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1266, 1270 (D. Kan. 2012) ("Contrary to the defendant's suggestion, a plaintiff alleging defamation need not recite the exact words of communication in issue.") (citing *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)); *Rockwell Med., Inc. v. Yocum*, 2014 WL 2965307, at *7 (E.D. Mich. June 26, 2014) (complaint pled sufficient defamation claim under Fed. R. Civ. P. 8 without "identify[ing] the exact words published" or "the time, place, or parties involved[.]"); *Cristelli v. Filomena II, Inc.*, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999) ("According to Rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only provide sufficient notice to the other party of the allegations made against him.") (citations omitted).

As further detailed in Argument II.A.2, *infra*, Ruschowski's cited cases do not negate this principle nor require Plaintiffs to plead the alleged defamatory statements in any further specificity than that which "provide[s] sufficient notice of the communications complained of to allow [a defendant] to defend itself." *McGeorge*, 871 F.2d at 955-56.

   2.    **The FAC easily meets and far exceeds the requirement that it present a short and plain statement providing sufficient notice of the alleged defamatory statement.**

Despite asserting that "Plaintiffs did not allege the details of [Rusckowski's] alleged statements with sufficient specificity[,]" the only alleged statement which Rusckowski actually argues lacks sufficient specificity is paragraph 91 of the FAC. (ECF 84, p. 16 (capitalization removed).) Rusckowski's argument fails. The FAC pleads the alleged statement defamatory statement in paragraph 91 with sufficient specificity.

The content of the alleged defamatory statement paragraph 91 is sufficiently clear and specific: "Avodah had perpetrated crimes and had been federally charged with labor trafficking religious Sisters." (ECF 72, ¶ 91.) This defeats Rusckowski's contention that the FAC is "[not] clear whether Ms. O'Hara-Rusckowski affirmatively claimed that Avodah was charged with a federal offense, or whether that was just the mistaken understanding of an unidentified recipient of the communication set forth in paragraph 91 of the Complaint." (ECF 84, p. 16.) The FAC pleads in clear terms that Rusckowski affirmatively stated Avodah "had been <u>federally charged</u> with labor trafficking religious Sisters." (ECF 72, ¶ 91 (emphasis added).)

The third parties to whom Rusckowski published this statement are sufficiently specific. Reviewed in conjunction with paragraphs 56, 63, and 65, the FAC pleads that Rusckowski published this statement to both existing and prospective donors and partners of both Avodah and The O'Connell House, including Kristen Meyer along with the Avodah partner and prominent individual in the Catholic community and national anti-trafficking field referenced in paragraph 65. (ECF 72, ¶¶ 56, 63, 65.)

7

The alleged time of publication for this statement is sufficiently specific: subsequent to the November 7, 2022 meeting, including but not limited to February 2023. (ECF, ¶¶ 55, 63). Federal courts have held that such alleged timeframes provide sufficient specificity. *See, e.g.*, *Rapids Lodge & Suites, LLC v. JFS Dev., Inc*., 2010 WL 2836949, at \*3-5 (N.D. Iowa July 19, 2010) ("fall of 2008" was sufficiently specific); *Nelson v. Allstate Ins. Co.*, 1993 WL 105120, at \*4 (D. Kan. Mar. 8, 1993) ("November, 1991" was sufficiently specific); *compare Royal Pac. Ltd. v. Faith Elec. Manufacture Co., Ltd*, 322 F. Supp. 3d 1178, 1186 (D.N.M. 2018) (allegation that statements were published "[c]ommencing in or around March 2016 and continuing thereafter[]" for period of eighteen months without further detail lacked sufficient specificity).

Accordingly, Plaintiffs have pled in detail the content, audience, and time of publication of the alleged defamatory statement in paragraph 91 to "provide sufficient notice of the communications complained of to allow [Ruscowski] to defend" herself. *McGeorge*, 871 F.2d at 955-56. Ruscowski cites no case which undermines this conclusion.

Initially: Rusckowski's citation to *Carosella* for the proposition that Plaintiffs must "identify precisely to whom the alleged 'disparaging remarks' were made, the time and place of the publication, and the alleged defamatory words themselves" does not undermine the conclusion that Plaintiffs sufficiently pled the alleged defamatory statement in paragraph 91 (ECF 84, p. 16.) As set forth above, in *Carosella*, then-Magistrate Judge Tafoya erroneously applied a heightened pleading standard to the defamation claim at issue. 2017 WL 11545379, at \*3. This went uncorrected by Judge Martinez when adopting Judge Matoya's recommendation to dismiss the plaintiff's defamation claim. *See* 2017 WL 11545380, at \*3. This Court should thus disregard *Carsoella*'s legal analysis for this reason alone.

Yet on its facts, *Carosella* helps demonstrate a distinction between complaints which plead a defamation claim with sufficient specificity and those that do not. The complaint in *Carosella* merely alleged that "disparaging remarks" were made to an unlimited potential audience group comprised of any and all "employees and persons outside the company on a continual basis" over a nearly three-year period. *Carosella*, 2017 WL 11545380, at *3. This is a far cry from Plaintiffs' FAC, which for the alleged defamatory statement in paragraph 91, pleads in detail the statement's content ("Avodah had perpetrated crimes and had been federally charged with labor trafficking religious Sisters"), audience (existing and prospective donors and partners of both Avodah and The O'Connell House, including Kristen Meyer and the individual referenced in paragraph 65), and time of publication (subsequent to the November 7, 2022 meeting, including but not limited to February 2023).

The remaining eight cases in Rusckowski's string citation, which Rusckowski presents without analysis or even parentheticals, further demonstrate this distinction and further support the conclusion that Plaintiffs have pled their defamation claims with sufficient specificity. (ECF 84, pp. 16-17) In each of those eight cases, courts found the defamation claims at issue lacked sufficient specificity because the pleadings failed to allege either basic facts identifying the contents, audience, and timing of publication of the alleged defamatory statements, or else failed to allege a defamatory statement at all. *See Banks v. Jackson*, 2021 WL 4149618, at *8-9 (D. Colo. Sept. 13, 2021) (finding lack of sufficient specificity where Defendant's counterclaim alleged that Plaintiffs and their "counterparts" intentionally "took to radio and social media posting vulgar and quite despicable lies about [Defendant] and his family" without further detail); *Grays v. Granicus, LLC*, 2019 WL 8750267, at *12 (D. Colo. Oct. 25,

2019), *report and recommendation adopted in part, rejected in part*, 2020 WL 1482620 (D.

Colo. Mar. 26, 2020) (finding lack of sufficient specificity where complaint alleged:

"Defendants have made disparaging statements regarding Plaintiff's work to sister company

Vertafore, and others, while having knowledge of Plaintiff's claims."); *Ross v. Gallegos*, 2013

WL 6283910, at *4 (D. Colo. Dec. 3, 2013) (finding lack of sufficient specificity where pro se

plaintiff asserted "defamation of character" without any identifiable alleged statement);

*Partminer Worldwide Inc. v. Siliconexpert Techs. Inc.*, 2010 WL 502718, at *5 (finding no

actionable defamatory statement where correspondence at issue accurately informed a third-

party of the fact that a lawsuit had been filed); *Walters v. Linhof*, 559 F. Supp. 1231, 1233-34

(D. Colo. 1983) (finding lack of sufficient specificity where complaint alleged that defendants

had presented a letter to public officials purportedly "contain[ing] statements about the

Plaintiffs which were untrue" without further identifying statements or alleging actual

publication); *Royal Pac. Ltd.*, 322 F. Supp. 3d at 1186 (finding lack of sufficient specificity

where counterclaim alleged that corporation had, on a continuing basis over an eighteen-month

period, "represented to third parties that [the counterclaim plaintiff's] products were defective

and presented safety hazards to persons purchasing and/or using [the] products" without

identifying any individual who published the alleged statements or any alleged audience);

*Celli v. Shoell*, 995 F. Supp. 1337, 1345 (D. Utah 1998) (finding lack of sufficient specificity

where complained alleged: "Defamatory statements, both written and oral, were made by the

Defendants against the Plaintiffs over the past four years."); *Bushnell Corp.*, 973 F. Supp.

1276, 1286 (D. Kan. 1997) (erroneously applying heightened pleading standard and finding

lack of sufficient specificity where complaint alleged that a "[defendant corporation], its

10

distributors and employees have published various false and defamatory statements regarding [plaintiff] to [plaintiff's] customers and the industry in general" without further identifying any individual who published the alleged statements or the statements' audience).

Rusckowski's cited authority therefore helps defeat her own argument and supports the conclusion that the FAC has sufficiently pled the alleged defamatory statement in paragraph 91. By pleading in detail the content, audience, and time of publication of the alleged defamatory statement in paragraph 91, Plaintiffs have "provide[d] sufficient notice of the communications complained of to allow [Rusckowski] to defend" herself. *McGeorge*, 871 F.2d at 955-56. Ruscowski's contrary argument fails.[2]

### B.    The FAC alleges defamatory statements of fact, not opinion.

Rusckowski asserts a one-paragraph argument that the defamatory statements alleged in the FAC are "simple expression[s] of opinion[,]" not factual statements. (ECF 84, p. 17.) Rusckowski further asserts a one-sentence argument that "Plaintiffs' claims all stem from constitutionally-protected speech[.]" (ECF 84, p. 4.) Rusckowski is wrong.

The First Amendment does not protect false and defamatory statements represented as factual. *Counterman v. Colorado*, 143 S. Ct. 2106, 2113-14 (2023) ("From 1791 to the present, the First Amendment has permitted restrictions upon the content of speech in a few limited

---

[2] While the FAC sufficiently pleads each defamatory statement it alleges, Plaintiffs re-emphasize that Rusckowski asserts no argument that any other alleged defamatory statement in the FAC apart from paragraph 91 lacks sufficient specificity. (*See* ECF, pp. 16-17.) To the extent Ruscowski argues in her Reply that any other alleged defamatory statement apart from paragraph 91 lacks sufficient specificity, this would warrant and Plaintiffs will request a sur-reply to respond. *See, e.g., Pirnie v. Key Energy Servs., LLC*, 2009 WL 1386997, at *1 (D. Colo. May 15, 2009) (sur-reply warranted where "reply brief raises new material that was not included in the original motion[,]" including "new legal arguments").

areas[,]" including "defamation—false statements of fact harming another's reputation."). Nor does any other constitutional provision. This is because "[f]alse and defamatory statements of fact [] have no constitutional value." *Id*. (quotations omitted).

To determine whether an alleged defamatory statement is represented as factual, as distinct from opinion, and thus actionable as a defamation claim, this Court conducts a two-step inquiry. *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994). The first inquiry is whether an alleged defamatory statement is "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). The second inquiry is "whether reasonable people would conclude that the assertion is one of fact." *Keohane*, 882 P.2d at 1299 (citing *Milkovich*, 497 U.S. at 21). "The factors relevant to the second inquiry are: (1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed." *Id.*

All defamatory statements alleged in the FAC were represented as statements of fact, not opinion. The statements that Plaintiffs were "labor trafficking" religious Sisters (ECF 72, ¶¶ 77, 100), "had stolen and misappropriated grant funds[]" (ECF 72, ¶¶ 84, 107), and that Avodah had "perpetrated crimes and had been federally charged with labor trafficking religious Sisters" and Fitzpatrick as Executive Director of Avodah had "perpetrated crimes" (ECF 72, ¶¶ 91, 114) were all represented as factual. These statements are all provably true or false, as Plaintiffs either did or did not commit labor trafficking of religious Sisters, did or did not steal and misappropriate grant funds, did or did not perpetrate crimes, and Avodah either has or has not been federally charged with labor trafficking religious Sisters. Reasonable people would

conclude these statements are factual, as they pertain to the occurrence or non-occurrence of either: (1) the purported conduct (labor trafficking, theft and misappropriation of grant funds, and perpetration of crimes), or (2) the purported event (filing of federal criminal charges).This is distinct from any personal opinion of Rusckowski's regarding that purported conduct or event, or how third parties should refrain from or adjust their dealings with Plaintiffs based on that purported conduct or event. Rusckowski thus represented these statements as factual.

Further, the statement that Fitzpatrick is a "demon" was also represented as factual. (ECF 72, ¶ 121.) Rusckowski argues that this statement is non-actionable as rhetorical hyperbole. (ECF 84, pp. 15-16.) But Rusckowski fails to account for the requisite inquiry of the statement's context, audience, and circumstances. *Keohane*, 882 P.2d at 1299. This statement was published by Rusckowski as a member of a faith-based community specifically to other members of that faith-based community. (ECF 72, ¶ 64.) This distinguishes each of Ruckowski's cited cases on this issue, as the alleged statements in each case were published to a general, not faith-based, audience. *See Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 268 (1974) ("traitor to his God" statement published in trade union literature for general audience); *Cummings v. City of New York*, 2020 WL 882335, at *22 (S.D.N.Y. Feb. 24, 2020) ("white devil" statement published on radio program with general audience); *Roth v. United Fed'n of Teachers*, 787 N.Y.S.2d 603, 606 (N.Y. Sup. Ct. 2004) ("Satan" statement published in written resolution of teachers' union for general audience); *Blomberg v. Cox Enterprises, Inc.*, 491 S.E.2d 430, 432 (Ga. Ct. App. 1997) ("Silver-tongued devil" statement published in newspaper with general audience). Construing all reasonable inferences from the FAC's factual allegations in Plaintiffs' favor, as federal

procedure requires, *Dill*, 155 F.3d at 1201, there is a reasonable inference that as a member of a faith-based community communicating specifically to other faith-based community members, Rusckowski represented this statement as factual.

Rusckowski also argues that the statement that Fitzpatrick is a "demon" cannot be proved true or false in this Court. (ECF 84, p. 15.) But in analyzing a defamatory statement, this Court analyzes the "common meaning of the words utilized. *Burns*, 659 P.2d 1351, 1357 (Colo. 1983). "Demon" is commonly defined as an "agent of evil, harm, distress, or ruin[.]" (Demon, *Merriam-Webster's Dictionary* (2023)). Rusckowski herself indicated this was her meaning, as in the same text message stating Fitzpatrick is a "demon[,]" she labelled Fitzpatrick as an "evil we are up against!" (ECF, ¶ 64.) A factfinder in this Court may determine, based on objective analysis of Fitzpatrick's background, whether Fitzpatrick has been an "agent of evil, harm, distress, or ruin[.]" The statement is thus actionable for a defamation claim.

Accordingly, all defamatory statements alleged in the FAC were represented as statements of fact, not opinion. *Keohane*, 882 P.2d at 1299.

### C.    The FAC sufficiently pleads material falsity and actual malice.

Plaintiffs agree that the defamatory statements alleged against Rusckowski involve matters of significant public concern, such that material falsity and actual malice are elements of Plaintiffs' defamation claims. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017). The FAC sufficiently pleads both elements.

### 1.    The FAC sufficiently pleads material falsity.

The determination of whether an alleged defamatory statement is materially false analyzes an alleged falsity by "comparing the damage it has done to the plaintiff's public

14

reputation to the damage the truth would have caused." *Bustos v. A & E Television Networks*,
646 F.3d 762, 764 (10th Cir. 2011). As then-Circuit Judge Gorsuch explained, an alleged falsity
is material where it is "likely to cause reasonable people to think significantly less favorably
about the plaintiff than they would if they knew the truth." *Id.* (quotations omitted); *see also
Brokers' Choice*, 861 F.3d at 1107 (quoting *Bustos* for same). The FAC sufficiently pleads the
material falsity of all alleged defamatory statements.

First: the FAC pleads facts that, accepted as true, at minimum plausibly allege (if not
clearly establish) the material falsity of Rusckowski's statement that Plaintiffs were "labor
trafficking" religious Sisters. (ECF 72, ¶¶ 77, 100.) Both by common meaning and by statutory
definition in potentially applicable jurisdictions, "labor trafficking" connotes forced, coerced, or
otherwise involuntary labor. *See, e.g.,* 22 U.S.C. § 7102(11)(B); C.R.S. § 18-3-503(1); Mass.
Gen. Laws ch. 265, § 51; *see also* Trafficking, Black's Law Dictionary (12th ed. 2024).

The FAC pleads facts establishing that Plaintiffs did not subject the religious Sisters to
forced, coerced, or otherwise involuntary labor. Rather, the FAC establishes that the religious
Sisters voluntarily approved and accepted internships with Avodah partner organizations
throughout the U.S. in accordance with their employment agreements. (ECF 72, ¶¶ 16, 32.)
These internships were in no way forced, coerced, or otherwise involuntary and the FAC thus at
minimum plausibly alleges that Plaintiffs were not "labor trafficking" the religious Sisters.

Rusckowski's asserted facts that "Denver law enforcement raided Plaintiffs' property
and removed Sisters therefrom[]" and that "the federal government is currently investigating
Plaintiffs for labor trafficking" do not undermine this conclusion. (ECF 84, p. 22.)
Notwithstanding these categorically false characterizations of a "raid," the FAC pleads facts

demonstrating that the unwarranted removal of religious Sisters from Avodah's Denver campus resulted from Rusckowski's false and defamatory statements to the Archdiocese that Plaintiffs were labor trafficking religious Sisters. (ECF 72, ¶ 61.) Federal procedure requires this Court to accept these facts as true and construe all reasonable inferences in Plaintiff's favor. *Dill*, 155 F.3d at 1201; *Hall*, 935 F.2d at 1109. Thus, the unwarranted removal of religious Sisters from Avodah's Denver campus, as instigated by Rusckowki's false and defamatory statements, in no way negates the material falsity of Rusckowski's statement that Plaintiffs were "labor trafficking" religious sisters.

Likewise, the FAC pleads facts demonstrating that: (1) Plaintiffs have not labor trafficked religious sisters such that the federal criminal investigation against Plaintiffs is baseless (ECF 72, ¶¶ 16, 32); (2) upon information and belief, Ruscowski caused or otherwise contributed to the U.S. Attorney's Office for the District of Massachusetts convening the federal criminal investigation against Plaintiffs regarding allegations that Avodah had labor trafficked religious sisters (ECF 72, ¶¶ 72); and (3) no federal criminal charges have been filed against Plaintiffs (ECF 72, ¶ 73). Accepting these facts as true and construing all reasonable inferences in Plaintiff's favor, the FAC again at minimum plausibly alleges that Plaintiffs did not commit labor trafficking of the religious sisters.

Further, to the extent Rusckowski argues that the statement that Plaintiffs were "labor trafficking" religious sisters is not materially false because, by Rusckowski's phrasing, "the Passionist Sisters were sent off to third parties," that argument fails. (ECF 84, p. 21.) The false statement that Plaintiffs were "labor trafficking" religious Sisters connotes forced, coerced, and involuntary labor. But in actuality, and as the FAC demonstrates, Avodah arranged internships

16

for the Passionist Sisters at similar faith-based and charitable partner organizations, which the

Passionist Sisters voluntarily approved and accepted, in accordance with the express terms of

their employment agreements. Rusckowski's false statement is thus at minimum "likely to

cause reasonable people to think significantly less favorably about the plaintiff than they would

if they knew the truth." *Bustos*, 646 F.3d at 764. The FAC sufficiently pleads the material

falsity of this statement. *Id.*

Second: the FAC pleads facts that, accepted as true, at minimum plausibly allege (if not

clearly establish) the material falsity of Rusckowski's statements that Plaintiffs "had stolen and

misappropriated grant funds." (ECF 72, ¶¶ 84, 107.) The FAC explicitly states that Plaintiffs

did not steal or otherwise misappropriate any of the grant funding they received for

development of the Lowell Home and its programs and operations. (ECF 72, ¶¶ 24, 27-29.) The

FAC alleges that both Rusckowski and Malta's leadership instructed Plaintiffs to use Malta

grant funds to pay for construction work at the Lowell Home and, once received, to use funds

from The Flatley Foundation to reimburse the funds donated by Malta. (ECF 72, ¶ 29.) The

FAC further pleads facts demonstrating that Plaintiffs followed these instructions and properly

administered all grant funding, as the Controller for Malta confirmed in correspondence to

Avodah that all funds had been accounted for and were reconciled. (ECF 72, ¶ 45.) The FAC

thus at minimum plausibly alleges that Plaintiffs did not steal or misappropriate grant funding.

That "Plaintiffs turned over unused funds and management of the Passionist Sisters to

[Rusckowski] and relinquish[ed] control over the relevant physical property[]" does not negate

this conclusion. (ECF 84, p. 22.) The FAC pleads facts demonstrating that Plaintiffs did so only

under coercion and duress from Rusckowski's improper threats. (ECF 72, ¶¶ 42-45.)

17

Rusckowski's suggestion that in doing so, Plaintiffs "conceded their wrongdoing" is false and misrepresents the FAC's allegations. (ECF 84, pp. 21-22.) Plaintiffs never conceded wrongdoing and the FAC never alleges that they did. (ECF 72, ¶¶ 42-45.) Plaintiffs have always maintained, and the FAC alleges, that they did not steal or misappropriate grant funding.

Nor does Rusckowski's asserted fact that "the federal government is currently investigating Plaintiffs for [] financial impropriety" negate the material falsity of the statement that Plaintiffs had stolen and misappropriated grant funding. (ECF 84, p. 22.) The FAC pleads facts demonstrating that: (1) Plaintiffs did not steal or misappropriate grant funding such that the federal criminal investigation against Plaintiffs is baseless (ECF 72, ¶¶ 24, 27-29, 45); (2) upon information and belief, Rusckowski caused or otherwise contributed the federal criminal investigation against Plaintiffs (ECF 72, ¶¶ 72); and (3) no federal criminal charges have been filed against Plaintiffs (ECF 72, ¶ 73). Accepting these facts as true, the FAC at minimum plausibly alleges that Plaintiffs did not steal or misappropriate grant funding.

Further, to the extent Rusckowski argues that the statement that Plaintiffs stole or misappropriated grant funding is not materially false because, according to Rusckowski, Plaintiffs "received funds to train the Passionist Sisters and house survivors at the Lowell Home, spent funds dedicated towards those purposes, yet, the Lowell Home was incomplete [and] no survivors were cared for there," that argument fails. (ECF 84, p. 21.) Whether Plaintiffs accomplished all program objectives with grant funds for the Lowell Home is a distinct inquiry from whether Plaintiffs stole or misappropriated those funds. The critical distinction is that in not accomplishing all program objectives, Plaintiffs had still spent the grant funds toward their dedicated and agreed-upon purpose, in a good-faith attempt to advance

18

Avodah's mission and develop the Lowell Home. In stealing or misappropriating grant funds,
Plaintiffs would have unlawfully diverted the grant funds away from their dedicated purpose, to
self-serving ends rather than program objectives, and thereby deceived donors and partners,
defied Avodah's mission, and inhibited the development of the Lowell Home.

Where Rusckowski's false statements indicate that Plaintiffs improperly and unlawfully
diverted grant funds away from their dedicated purpose, rather than spending the grant funds
toward their dedicated purpose but not accomplishing all program objectives despite good-faith
efforts, Rusckowski's false statements are at minimum "likely to cause reasonable people to
think significantly less favorably about the plaintiff than they would if they knew the truth."
*Bustos*, 646 F.3d at 764. The FAC sufficiently pleads the material falsity of these statements. *Id*.

Third: the FAC pleads facts that, accepted as true, at minimum plausibly allege (if not
clearly establish) the material falsity of Rusckowski's statements that Avodah had "perpetrated
crimes and had been federally charged with labor trafficking religious Sisters" and that
Fitzpatrick as Executive Director of Avodah had "perpetrated crimes." (ECF 72, ¶¶ 91, 114.)
As set forth above, the FAC pleads facts demonstrating that Plaintiffs did not perpetrate either
of the two crimes implicated by Rusckowski's statements: they did not commit labor trafficking
of the religious Sisters, nor did they steal or misappropriate grant funds. (ECF 72 ¶¶ 16, 32 (did
not commit labor trafficking); ECF 72 ¶¶ 24, 27-29, 42-45 (did not steal or misappropriate grant
funds). There is no indication that Plaintiffs perpetrated any other crime. The FAC thus
sufficiently pleads the material falsity of these statements.

The FAC also sufficiently pleads the material falsity of Rusckowski's statement that
Avodah had been federally charged with labor trafficking. Initially: the FAC defeats

Rusckowski's argument that "Plaintiffs do not specify details regarding Ms. O'Hara-Ruskowski's alleged statements concerning the federal investigation, so it is impossible to know whether Ms. O'Hara-Rusckowski allegedly claimed that Plaintiffs were *under investigation* or *charged* by the federal government." (ECF 84, p. 22 n.6 (italics in original).) The FAC explicitly alleges that Rusckowski published false and defamatory statements claiming not just that Avodah was under investigation, but that Avodah "had been <u>federally charged</u> with labor trafficking religious Sisters." (ECF 72, ¶ 91 (emphasis added).) The FAC also demonstrates the material falsity of this statement, as "[n]o federal charges have been filed against Plaintiffs." (ECF 72, ¶ 73.)

To the extent Rusckowski argues that the statement that Avodah had been "federally charged" with labor trafficking is not materially false because the U.S. Attorney's Office for the District of Massachusetts has convened a federal criminal investigation against Plaintiffs, that argument fails. An investigation is a mere preliminary investigation. It is not the equivalent of the filing of federal criminal charges. Further, the FAC plausibly alleges that Rusckowski's knowingly false and defamatory statement caused or otherwise contributed to this investigation. (ECF 72, ¶ 72.) Where Rusckowski's false statements indicate that a grand jury has found probable cause and that federal criminal charges have been filed against Avodah, but in actuality there is only a preliminary investigation against Avodah which, upon information and belief, Rusckowski herself caused or otherwise contributed to, Rusckowski's false statement is at minimum "likely to cause reasonable people to think significantly less favorably about the plaintiff than they would if they knew the truth." *Bustos*, 646 F.3d at 764. The FAC therefore sufficiently pleads the material falsity of this statement. *Id.*

20

Fourth, and finally: the FAC sufficiently pleads the materiality falsity of Rusckowski's statement that Fitzpatrick is a "demon." (ECF 72, ¶ 121). The FAC pleads facts demonstrating Fitzpatrick's commitment to and work in faith-based service programs and charitable initiatives. (ECF 72, ¶¶ 12-18). Accepted as true, these facts plausibly allege that Fitzpatrick is not an "agent of evil, harm, distress, or ruin" and thus not a "demon."

Accordingly, the FAC sufficiently pleads the material falsity of all alleged defamatory statements. Rusckowski's contrary arguments fail.

### 2.    The FAC sufficiently pleads actual malice.

A defamatory statement is published with actual malice where it is published "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). The FAC sufficiently pleads that Rusckowski had knowledge that each of her defamatory statements regarding Plaintiffs were false and thus sufficiently pleads actual malice.

First: the FAC plausibly alleges that Rusckowski had knowledge of the falsity of her statement that Plaintiffs were "labor trafficking religious Sisters." (ECF 72, ¶¶ 77, 100.) The FAC pleads facts demonstrating that: (1) Rusckowski was involved in and had access to information regarding Plaintiffs' operation of the Sister Care model (ECF 72, ¶¶ 21-27, 33, 82, 105, 137); and (2) as part of Plaintiffs' operation of the Sister Care model, religious Sisters were placed in internships which they voluntarily approved, including the Passionist Sisters at the Lowell Home, for whom Rusckowski helped provide administrative oversight (ECF 72, ¶¶ 15-16, 21-24, 27, 32, 42-43.) Accepted as true and construed in Plaintiffs' favor, these facts at minimum allow a reasonable inference that Rusckowski knew Avodah placed the religious

Sisters in internships with their voluntary approval in accordance with their employment
agreements, such that Plaintiffs were not "labor tracking" religious Sisters.

Second: the FAC plausibly alleges that Rusckowski had knowledge of the falsity of her
statement that Plaintiffs "had stolen and misappropriated grant funds." (ECF 72, ¶¶ 84, 107.)
The FAC pleads facts demonstrating that Rusckowski helped administer the grant funds
donated to Plaintiffs for the Lowell Home (ECF 72, ¶¶ 24, 27-29); that Plaintiffs did not steal or
otherwise misappropriate any of the grant funding they received (ECF 72, ¶¶ 24, 27-29, 45);
that Rusckowski instructed Plaintiffs to use Malta grant funds to pay for construction work at
the Lowell Home and, once received, to use funds from The Flatley Foundation to reimburse
the funds donated by Malta. (ECF 72, ¶ 29); and that Plaintiffs followed these instructions and
properly administered all grant funding, as confirmed by the Controller for Malta (ECF 72, ¶
45.) Accepted as true and construed in Plaintiffs' favor, these facts at minimum allow a
reasonable inference that through Rusckowski's personal administration and oversight of grant
funds donated to Plaintiffs, Rusckowski had knowledge that Plaintiffs had not stolen or
misappropriated grant funds. (*See* ECF 72, ¶¶ 89, 112.)

Third: the FAC plausibly alleges that Rusckowski had knowledge of the falsity of her
statements that Avodah had "perpetrated crimes and had been federally charged with labor
trafficking religious Sisters" and that Fitzpatrick as Executive Director of Avodah had
"perpetrated crimes." (ECF 72, ¶¶ 91, 114.) As set forth in the preceding two paragraphs, the
FAC plausibly alleges Rusckowski's knowledge that Plaintiffs were not labor trafficking
religious sisters and had not stolen or misappropriated grant funds. There is no indication that
Plaintiffs had perpetrated any other crime. Thus, the FAC likewise plausibly alleges

Rusckowski's knowledge that Plaintiffs had not perpetrated crimes. Additionally, the FAC plausibly alleges Rusckowski's knowledge of the status of the federal criminal investigation against Plaintiffs and that no federal criminal charges have been filed (ECF 72, ¶¶ 72, 73, 96.) The FAC thus plausibly alleges Rusckowski's knowledge of the falsity of these statements.

Fourth, and finally: the FAC plausibly alleges that Rusckowski had knowledge of the falsity of her statement that Fitzpatrick is a "demon." (ECF 72, ¶ 121.) The FAC pleads facts demonstrating Rusckowski's former partnership with Fitzpatrick and her knowledge of Fitzpatrick's commitment to and work in faith-based service programs and charitable initiatives. (ECF 72, ¶¶ 21-33). In turn, these facts plausibly allege Rusckowski's knowledge that Fitzpatrick is not an "agent of evil, harm, distress, or ruin" and thus not a "demon."

The FAC thus sufficiently pleads actual malice for all alleged defamatory statements against Rusckowski. Accordingly, for the reasons in this Argument section II, the FAC states viable claims for defamation and Rusckowski's contrary arguments fail.

**III.    The First Amended Complaint states viable claims for intentional interference.**

Initially, this Court should reject Rusckowski's argument that "[t]o the extent that this Court dismisses Plaintiffs' defamation claims, it must also dismiss Plaintiffs' ancillary tort claims[.]" (ECF 84, p. 25.) A defamation claim is a separate and distinct claim with different elements from an intentional interference claim. *Compare, Brokers' Choice*, 861 F.3d at 1109 (defamation elements), *with Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 871 (Colo. 2004) (elements for intentional interference with a contract); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (elements for intentional interference with prospective business

relations). These claims and their elements remain separate even where an intentional interference claim is premised on the defendant's publication of defamatory statements.

For a defendant's defamatory statements to be actionable for an intentional interference claim, a plaintiff need only establish (in addition to establishing the remaining elements of intentional interference claims) that the defendant's statements: (1) were intended to induce a party to breach a contract or refrain from a prospective business relation with the plaintiff; and (2) were improper. *Krystkowiak*, 90 P.3d at 871; *Amoco Oil*, 908 P.2d at 500. Colorado law imposes no requirement that to be improper for purposes of an intentional interference claim, a defamatory statement must be represented as factual, materially false, and published with actual malice, as is required for a defamation claim involving a matter of public concern. *Compare Warne v. Hall*, 2016 CO 50, ¶ 25 (factors to analyze whether a defendant's conduct is improper for intentional interference claim), *with Brokers' Choice*, 861 F.3d at 1109 (elements for defamation claim involving matter of public concern).

Rather, the inquiry to determine whether a statement is improper for purposes of an intentional interference claim is flexible and case-specific. The analysis includes but not is limited to factors such as: "the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes, [and] the interests sought to be advanced by the actor[.]" *Hall*, ¶ 25. Colorado law thus permits a jury to conclude that a defamatory statement is improper and therefore actionable for an intentional interference claim, regardless of whether the jury concludes that the statement was represented as factual, is materially false, and was published with actual malice as is required to be actionable for a defamation claim. *Id.*

Accordingly, this Court's analysis on Plaintiffs' defamation claims does not control its analysis on Plaintiffs' intentional interference claims.

**A.      The FAC states a viable claim for intentional interference with a contract.**

Rusckowski argues that the FAC fails to state a claim for intentional interference with a contract because, according to Rusckowski, the FAC fails to sufficiently plead: (1) Rusckowski's knowledge of Plaintiffs' contracts with the religious Sisters; (2) Rusckowski's intentional interference with those contracts; and (3) that Rusckowski's intentional interference caused the religious Sisters to breach or terminate their contracts with Plaintiffs. (ECF 84, pp. 25-28.) Each argument fails, as set forth below.

**1.      The FAC sufficiently pleads Rusckowski's knowledge of Plaintiffs' contracts with the religious Sisters.**

The FAC plausibly alleges Rusckowski's knowledge of Plaintiffs' contracts with the religious Sisters. The FAC alleges facts that: (1) Rusckowski was involved in and had access to information regarding Plaintiffs' operation of the Sister Care model; (ECF 72, ¶¶ 21-24, 27, 33); (2) Plaintiffs' operation of the Sister Care model involved partnerships and contracts with the religious Sisters (ECF 72, ¶¶ 15-16, 27, 130-136); (3) Rusckowski had knowledge of Plaintiffs' partnerships with several groups of religious Sisters, as demonstrated by Rusckowski's knowledge of Plaintiffs' capacity to implement the Sister Care model at the Lowell Home and her assessment that the Sister Care model could be "replicate[d]" to "improve many, many more lives[]" (¶¶ 21-24, 27, 33); and (4) at minimum, Rusckowski had specific knowledge of Plaintiffs' contract with the Passionist Sisters, as demonstrated by Rusckowski's demand that Plaintiffs transfer management of the Passionist Sisters to Rusckowski (ECF 72, ¶¶ 42-43).

Accepted as true and reviewed collectively and most favorably to Plaintiffs, these alleged facts at minimum allow a reasonable inference that Rusckowski had knowledge of Plaintiffs' contracts with the religious Sisters. Where Rusckowski had knowledge that Plaintiffs partnered with religious Sisters to operate the Sister Care model and Rusckowski at minimum had specific knowledge of Plaintiffs' contract with the Passionist Sisters, it is a reasonable inference that Rusckowski had further knowledge of Plaintiffs' contracts with other groups of religious Sisters. To conclude otherwise would result in a scenario where Rusckowski knew Plaintiffs partnered with religious Sisters to operate the Sister Care model, knew these partnerships involved contracts between Plaintiffs and the religious Sisters, specifically knew of at least one of these contracts between Plaintiffs and the religious Sisters, but had zero knowledge whatsoever of any other contract between Plaintiffs and the religious Sisters despite knowing that these partnerships involved such contracts. The FAC thus pleads sufficient facts allowing a reasonable inference that Rusckowski knew of these contracts.

2.    **The FAC sufficiently pleads Rusckowski's intentional and improper contract interference.**

The FAC plausibly alleges that Rusckowski intentionally and improperly interfered with Plaintiffs' contracts with the religious Sisters. The FAC alleges facts that: (1) Rusckowski recognized the business potential of the Sister Care model and its value for her own career and her own entities (ECF 72, ¶¶ 33, 39, 40); (2) Rusckowski, as a heavily connected and prominent figure in the faith-based and charitable communities, spread false and defamatory statements that Plaintiffs were labor trafficking and thereby improperly managing and improperly sponsoring the religious Sisters with whom they had contracted (ECF 72, ¶¶ 22, 56, 58, 61, 62 139); (3) Rusckowski spread these false and defamatory statements directly or indirectly to the

26

Archdiocese, among others (ECF 72, ¶¶ 58, 61, 62); (4) on account of false concerns resulting

from Rusckowski's false and defamatory statements, the Archdiocese induced the removal of

religious Sisters from Avodah's Denver campus and further issued communications to several

religious Sister organizations stating concerns regarding Plaintiffs' purported improper

management and sponsorship of religious sisters (ECF 72, ¶¶ 61, 62); and (5) on account of

false concerns resulting from the Archdiocese's communications, several religious Sisters

organizations breached or terminated their contracts with Plaintiffs. (ECF 72, ¶¶ 61, 62, 139)

Accepted as true and reviewed collectively and most favorably to Plaintiffs, these

alleged facts at minimum allow a reasonable inference that Rusckowski intentionally and

improperly induced the religious Sisters to breach or terminate their contracts with Plaintiffs.

Specifically: these facts allow a reasonable inference that Rusckowski wanted to obtain control

and take credit for the Sister Care model. To do so, it is a reasonable inference that Rusckowski

wanted to disrupt and prevent further partnerships and contracts between Avodah and the

religious Sisters, in effort to instead competitively position both The O'Connell House and

Rusckowski's entity Global Strategic Operatives (GSO) for such partnerships and contracts. As

a heavily connected and prominent figure in the faith-based and charitable communities, with

corresponding knowledge of the power brokers and political dynamics in those communities, it

is a reasonable inference that Rusckowski knew how to do this. It is a reasonable inference that

Rusckowski recognized the Archdiocese's influence over the religious Sisters organizations

with whom Avodah contracted and the potential disruption which the Archdiocese could cause

to Plaintiffs' partnerships with the religious Sisters if the Archdiocese was misinformed with

false reports that Plaintiffs were labor trafficking and improperly managing and improperly

sponsoring religious Sisters. It is a reasonable inference that this includes Rusckowski's recognition of the potential for the Archdiocese to cause religious Sisters organizations to breach or terminate their contracts with Plaintiffs if the Archdiocese communicated false concerns, as spread by Rusckowski, regarding Plaintiffs' management of the religious Sisters.

Accordingly, accepting the FAC's alleged facts as true and construing all reasonable inferences in Plaintiff's favor, the FAC at minimum pleads sufficient facts allowing a reasonable inference that Rusckowski intentionally and improperly induced the religious Sisters to breach or terminate their contracts with Avodah, by spreading false and defamatory statements both directly and indirectly to the Archdiocese that Plaintiffs were labor trafficking and thereby improperly managing and improperly sponsoring religious Sisters.

### 3.    The FAC sufficiently pleads causation.

The posture of Rusckowski's causation argument warrants emphasis. Rusckowski requests in a pleadings motion, without the parties conducting any discovery, that this Court dispositively rule on the issue of causation, which Colorado law reserves to the jury as factfinder except "[o]nly in the clearest of cases, where reasonable minds can draw but one inference from the evidence[,] *Garcia v. Colorado Cab Co., LLC*, 2023 CO 56, ¶ 19, because by Rusckowski's factual account her interference was "of *de minimis* consequence[]" in causing the religious Sisters to breach or terminate their contacts with Plaintiffs. (ECF 84, pp. 25-27 (italics in original).) Rusckowski's argument fails.

The FAC alleges facts that: (1) Rusckowski spread false and defamatory statements both directly and indirectly to the Archdiocese that Plaintiffs were labor trafficking and thereby improperly managing and improperly sponsoring religious Sisters (ECF 72, ¶¶ 22, 56, 58, 61, 62,

139); (2) as a direct result of Rusckowski's false and defamatory statements, the Archdiocese

induced the removal of religious Sisters from Avodah's Denver campus and further issued

communications to several religious Sister organizations stating concerns regarding Plaintiffs'

purported improper management and sponsorship of religious sisters (ECF 72, ¶¶ 61, 62); and

(3) as a direct result of this conduct and these communications from the Archdiocese, which

Rusckowski instigated through false and defamatory statements, several religious Sisters

organizations breached or terminated their contracts with Plaintiffs. (ECF 72, ¶¶ 61, 62, 139.)

Accepting these facts as true and construing all reasonable inferences in Plaintiff's favor,

as federal procedure requires, *Dill*, 155 F.3d at 1201, the FAC at minimum pleads sufficient facts

allowing a reasonable inference that Rusckowski's intentional and improper interference caused

the religious Sisters organizations to breach or terminate their contracts with Plaintiffs.

Accordingly, the FAC states a viable claim for intentional interference with a contract and

Rusckowski's contrary arguments fail.

> **B.    The FAC states a viable claim for intentional interference with prospective business relations.**

Rusckowski argues that the FAC fails to state a claim for intentional interference with

prospective business relations because, according to Rusckowski, the FAC fails to sufficiently

plead: (1) Rusckowski's knowledge of Plaintiffs' prospective business relations with third-party

donors and partner organizations; (2) Plaintiffs' reasonable likelihood of forming business

relations with those organizations; (3) Rusckowski's intentional interference with those

prospective business relations; and (4) that Rusckowski's intentional interference caused third-

party donors and partner organizations to discontinue or refrain from prospective business

relations with Plaintiffs. (ECF 84, pp. 25-28.) Each argument fails, as set forth below.

**1.    The FAC sufficiently pleads Rusckowski's knowledge of Plaintiffs' prospective business relations.**

The FAC plausibly alleges Rusckowski's knowledge of Plaintiffs' prospective business relations with third-party donors and partner organizations, including but not limited the following national organizations in the anti-trafficking field: Dominican Sisters of St. Catherine Siena, Tim Tebow Foundation, Opus AMDG, Wellspring, Generate Hope, and Her Campaign. The FAC alleges facts that Rusckowski: (1) is a heavily connected and prominent figure in the faith-based and charitable communities, with a vast network of donor contacts in these communities (ECF 72, ¶ 22); (2) partnered with Plaintiffs on a large-scale effort to implement the Sister Care model at the Lowell Home and connected Plaintiffs with prospective donors for this initiative (¶¶ 21-30); (3) helped manage Plaintiffs' partnerships with donors (ECF 72, ¶¶ 21-30); and (4) was involved in and had access to information regarding Plaintiffs' fundraising efforts (ECF 72, ¶¶ 21-30).

Accepted as true and reviewed collectively and in Plaintiffs' favor, these facts at minimum allow a reasonable inference that Rusckowski had knowledge of Plaintiff's prospective donor relationships. Rusckowski's prominent standing and network of contacts with donors in the faith-based and charitable communities allow a reasonable inference that Rusckowsi would have knowledge of the donors in these communities which might fund organizations such as Avodah and, through communications with her extensive network of donor contacts, would also have knowledge regarding the prospective donors actively considering donating to Avodah. Additionally, Rusckowski's knowledge of and involvement in Plaintiff's fundraising efforts allow a reasonable inference that Rusckowski would have knowledge of the prospective donor relationships that Plaintiffs were developing or likely to develop. The FAC thus sufficiently

pleads Rusckowski's knowledge of Plaintiffs' prospective business relations with third-party
donors and partners.

### 2.    The FAC sufficiently pleads Plaintiffs' reasonable likelihood of forming prospective business relations.

The FAC plausibly alleges Plaintiffs' reasonable likelihood of forming prospective
business relations with third-party donors and partner organizations.  The FAC alleges facts that
prior to the disruption caused by Rusckowski's false and defamatory statements: (1) Plaintiffs
had been in discussions with prospective donors regarding millions of dollars in donations
(ECF 72, ¶ 68); (2) Plaintiffs had been invited and planned to attend prominent conferences and
seminars that allowed critical networking opportunities with major prospective donors and
partners (ECF 72, ¶¶  69-71); and (3) Plaintiffs specifically had developed advantageous
prospective business partnerships with the following national organizations in the anti-
trafficking field: Dominican Sisters of St. Catherine Siena, Tim Tebow Foundation, Opus
AMDG, Wellspring, Generate Hope, and Her Campaign. (ECF 72, ¶ 143.) Accepted as true and
reviewed in Plaintiffs' favor, these facts allow a reasonable inference that Plaintiffs had a
reasonable likelihood of forming prospective business relations with donors and partners,
including but not limited to the organizations referenced above.

### 3.    The FAC sufficiently pleads Rusckowski's intentional and improper interference with Plaintiffs' prospective business relations.

The FAC plausibly alleges that Rusckowski intentionally and improperly interfered
with Plaintiffs' prospective business relations with third-party donors and partner organizations.
The FAC alleges facts demonstrating that Rusckowski had a personal and business motive to
eliminate Avodah as a competitor for grants, partnerships, and business opportunities pertaining

to the Sister Care model and survivor safe homes. (ECF 72, ¶¶ 35-40, 46-54, 147.) The FAC

further alleges facts that Rusckowski, as a heavily connected and prominent figure in the faith-

based and charitable communities, leveraged her network to publish false and defamatory

statements regarding Plaintiffs to prominent donors and partners in these communities. (ECF

72, ¶¶ 22, 56-66.) This included statements to prominent faith-based community influencer

Kristen Meyer, statements to the influential network of donor contacts referenced as recipients

of the text messages in paragraph 64, and statements to the prominent prospective donor in

paragraph 65 that they should refrain from donating to Avodah. (ECF 72, ¶¶ 63-66.)

Rusckowski denigrated Plaintiffs in these communications, going so far as to call Fitzpatrick a

"demon[,]" labeling him as "evil[,]" and warning prospective donors that Fitzpatrick would

"probably try to go after you!" (ECF 72, ¶ 64.) Rusckowski also urged these individuals to

broadcast to their networks to likewise refrain from donating to Avodah. (ECF 72, ¶¶ 63-66.)

Accepted as true and reviewed collectively and most favorably to Plaintiffs, these

alleged facts allow a reasonable inference that Rusckowski intentionally and improperly

interfered with Plaintiffs' prospective business relations with prospective donors and partners.

Specifically: these facts allow a reasonable inference that Rusckowski had an improper motive

to eliminate Avodah as a competitor and instead competitively position both The O'Connell

House and GSO for grants and partnerships pertaining to the Sister Care model and survivor

safe homes. The FAC alleges that Rusckowski also had the prominent standing and network to

do this. Leveraging her network of contacts with prominent faith-based and charitable

community influencers and prospective donors, the FAC alleges that Rusckowski spread false

and defamatory statements that tarnished Plaintiffs' reputation in these communities. This

included Rusckowski's direct communications to prospective donors along with those donors'
further communications to their networks, as instigated by Rusckowski, that they should refrain
from donating or partnering with Plaintiffs. Additionally, these facts allow a reasonable
inference that in a close-knit network of faith-based and charitable donors, Rusckowski's false
and defamatory statements were targeted to and did reach and influence prospective donors for
Avodah, including, but not limited to, Dominican Sisters of St. Catherine Siena, Tim Tebow
Foundation, Opus AMDG, Wellspring, Generate Hope, and Her Campaign.

Accordingly, accepting the FAC's alleged facts as true and construing all reasonable
inferences in Plaintiff's favor, as federal procedure requires, *Dill*, 155 F.3d at 1201, the FAC at
minimum pleads sufficient facts allowing a reasonable inference that Rusckowski intentionally
and improperly induced or otherwise caused third-party donors and partner organizations to
discontinue or refrain from prospective business relations with Plaintiffs, by spreading false and
defamatory statements regarding Plaintiffs both directly and indirectly to these donors and
partner organizations.

### 4.     The FAC sufficiently pleads causation.

As with Rusckowski's causation argument regarding Plaintiffs' claim for intentional
contract interference, Rusckowski again argues that Plaintiff have failed to sufficiently plead
causation because by Rusckowski's factual account, her interference was "of *de minimis*
consequence[]" in causing prospective donors and partners to discontinue or refrain from
prospective business relations. (ECF 84, pp. 25-27.) Rusckowski's argument again fails.

The FAC alleges facts that as a direct result of Rusckowski spreading false and
defamatory statements regarding Plaintiffs to her network of prominent contacts in the faith-

based and charitable communities: (1) Plaintiffs' reputation in the faith-based and charitable

communities was tarnished (ECF 72, ¶¶ 55-75); (2) Plaintiffs were disinvited and excluded from

prominent seminars and networking conferences that would have allowed critical networking

opportunities with major prospective donors and partners (ECF 72, ¶¶ 69-71); (3) prospective

donors withdrew their donations and financial commitments to Avodah (ECF 62, ¶ 67); and (4)

the following organizations discontinued or refrained from prospective business relations with

Plaintiffs: Dominican Sisters of St. Catherine Siena, Tim Tebow Foundation, Opus AMDG,

Wellspring, Generate Hope, and Her Campaign. (ECF 72, ¶¶ 143, 146.)

Accepting these facts as true and reviewing all reasonable inferences most favorably to

Plaintiffs, the FAC plausibly alleges that Rusckowski's intentional and improper interference

caused prospective donors and partners, including but not limited to the organizations referenced

above, to discontinue or refrain from prospective business relations with Plaintiffs. Accordingly,

for the reasons in this Argument section III, the FAC states viable claims for intentional

interference. Rusckowski's contrary arguments fail.

**IV.     The First Amended Complaint states a viable claim for extreme and outrageous conduct.**

Rusckowski argues that Fitzpatrick "cannot state a claim [for extreme and outrageous

conduct] as a matter of law because the criticism is related to his 'public persona' as Avodah's

Executive Director[.]" (ECF 84, p. 29.) This argument fails. United States Supreme Court

precedent is clear that even "public figures and public officials" may assert claims for extreme

and outrageous conduct premised on publication of defamatory statements where "the

publication contains a false statement of fact which was made with 'actual malice,' i.e., with

knowledge that the statement was false or with reckless disregard as to whether or not it was

true." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 (1988). As set forth in Argument sections II.B and II.C, *supra*, Rusckowski's defamatory statements contained false statements of fact and were published with actual malice. Fitzpatrick may therefore state a viable claim for extreme and outrageous conduct, regardless of whether "the criticism is related to his 'public persona' as Avodah's Executive Director[.]" (ECF 84, p. 29.)

Rusckowski's further argument that the "complained-of conduct is also not sufficiently extreme and outrageous[]" also fails. (ECF 84, p. 29.) In determining whether a plaintiff has alleged facts sufficient to support an extreme and outrageous conduct claim, courts analyze a defendant's alleged conduct in context of the totality of the case-specific circumstances. *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009). The FAC alleges facts that through false and defamatory statements, and with improper business and personal incentive, Rusckowski ridiculed and publicly tarnished Fitzpatrick and his work, character, morality, and faith in the in the professional, civic, and faith-based communities that mattered most to him.

Rusckowski cites no authority holding or suggesting that Colorado law precludes a factfinder from finding extreme and outrageous conduct based on the totality of these circumstances. The FAC states a viable claim for extreme and outrageous conduct.

## <u>CONCLUSION</u>

This Court should deny Plaintiffs' Motion.

Respectfully submitted this 20th day of September, 2024.

By: *s/ M. Caleb Meyer*
M. Caleb Meyer, Esq.
Adam M. Royval. Esq.
Gregory S. Carter, Esq.
**MESSNER REEVES LLP**
1550 Wewatta Street, Suite 710
Denver, CO 80202
Telephone: (303) 623-1800
*Attorneys for Plaintiffs, Avodah Farms and
Keenan Fitzpatrick*

## CERTIFICATE OF SERVICE

I hereby certify that on this September 20, 2024, a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was electronically filed via CM/ECF upon all counsel of record.

/s/ *Tracey Zastrow*
Tracey Zastrow

*This document was filed electronically pursuant to C.R.C.P. 121 § 1-26.  Duly signed original on file at the offices of Messner Reeves LLP.*