**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-00233-NYW-CYC

AVODAH FARMS, and
KEENAN FITZPATRICK,

      Plaintiffs,

v.

DEBORAH O'HARA-RUSCKOWSKI,

      Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiffs'-Counterclaim Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss"), [Doc. 127], and Plaintiffs' Motion for Leave to File Second Amended Complaint (the "Motion to Amend"), [Doc. 138]. The Court has reviewed the Motions and the related briefing. For the reasons set forth in this Order, the Motion to Dismiss is **GRANTED** and the Motion to Amend is **DENIED**.

## BACKGROUND

This Court set out the background of this case in detail in a prior order, *see* [Doc. 114], and repeats it here only as necessary to resolve the pending Motions. Plaintiff Keenan Fitzpatrick is the executive director of Plaintiff Avodah Farms, a nonprofit corporation that "works to restore and reintegrate women survivors of sex trafficking . . . through comprehensive, Christ-centered care provided by Catholic religious sisters and the faith-based community." [Doc. 72 at ¶¶ 1, 4, 12]. In 2021, Plaintiffs partnered with

Defendant Deborah O'Hara-Rusckowski "to develop a survivor safe home . . . in Massachusetts." [*Id.* at ¶¶ 20–21].

This partnership eventually soured, *see* [*id.* at ¶¶ 41–43], and Plaintiffs allege that Ms. O'Hara-Rusckowski "initiated a campaign to tarnish the reputation and public standing of Avodah and [Mr.] Fitzpatrick" by falsely claiming that Plaintiffs "were 'labor trafficking' religious Sisters, had stolen and misappropriated grant funds, and had perpetrated crimes," [*id.* at ¶¶ 55–56].  Plaintiffs allege that Ms. O'Hara-Rusckowski's alleged defamatory statements caused Avodah's donors and partners to withdraw donations or financial commitments and the Archdiocese of Denver to "disavow" Avodah. [*Id.* at ¶¶ 60, 67–68].  In addition, Plaintiffs allege that Defendant's statements "caused or otherwise contributed to the U.S. Attorney's Office for the District of Massachusetts convening a federal criminal investigation against Plaintiffs regarding allegations that Avodah had labor trafficked religious sisters." [*Id.* at ¶ 72].

In their Amended Complaint, Plaintiffs asserted five claims:  (1) a defamation claim asserted by Avodah, [*id.* at ¶¶ 76–98]; (2) a defamation claim asserted by Mr. Fitzpatrick, [*id.* at ¶¶ 99–128]; (3) a claim for intentional interference with contract asserted by both Plaintiffs, [*id.* at ¶¶ 129–41]; (4) a claim for intentional interference with prospective business relations asserted by both Plaintiffs, [*id.* at ¶¶ 142–49]; and (5) an extreme and outrageous conduct claim asserted by Mr. Fitzpatrick, [*id.* at ¶¶ 150–55].  Ms. O'Hara-Rusckowski subsequently filed two motions to dismiss:  one under Rule 12(b)(6) and the other under Colorado's anti-SLAPP statute.  [Doc. 84; Doc. 85].  On June 13, 2025, this Court granted the motions to dismiss in part and dismissed Plaintiffs' intentional interference claims without prejudice.  [Doc. 114 at 41–42].

Ms. O'Hara-Rusckowski answered Plaintiffs' Amended Complaint on July 31, 2025 and asserted three counterclaims: (1) a fraud counterclaim, [Doc. 122 at ¶¶ 212–29]; (2) a negligent misrepresentation counterclaim, [*id.* at ¶¶ 230–45]; and (3) an abuse of process counterclaim, [*id.* at ¶¶ 246–60]. On September 18, 2025, Plaintiffs moved to dismiss the abuse of process counterclaim. [Doc. 127]. And on February 10, 2026, Plaintiffs sought leave to file a second amended complaint. [Doc. 138]. These Motions are fully briefed and ready for resolution.

## LEGAL STANDARDS

### I.    The Motion to Amend

When a party files a motion to amend after the expiration of the deadline to amend pleadings,[1] the Court considers the request under Rules 15 and 16 of the Federal Rules of Civil Procedure. First, the Court determines whether the movant has demonstrated good cause to amend the Scheduling Order under Rule 16(b). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014). Then, the Court considers whether amendment is appropriate under Rule 15(a). *Id.*

Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (alteration in original) (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden may be satisfied

---

[1] The deadline for amendment of pleadings was October 18, 2024. [Doc. 118 at 7]. Although the Parties requested an extension of this deadline, *see* [Doc. 115], the Honorable Cyrus Y. Chung denied the request based on the Parties' failure to show good cause to extend the deadline, *see* [Doc. 117].

3

when a party learns of new information through discovery. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quotation omitted).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion. *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018).

## II.    The Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

**ANALYSIS**

**I.    The Motion to Amend**

Plaintiffs seek leave to file a second amended complaint to "correct[] the pleading deficiencies identified by this Court regarding Plaintiffs' intentional interference claims," which were dismissed in this Court's June 13, 2025 order ruling on Defendant's motions to dismiss.  [Doc. 138 at 2]; *see also* [*id.* at 8 ("Plaintiffs are requesting leave to re-file their intentional interference claims to correct pleading deficiencies identified by this Court and assert meritorious claims after the Court's order dismissing those claims without prejudice.")].

However, Plaintiffs' Motion to Amend does not address Rule 16's good cause standard or explain why good cause exists to amend the Scheduling Order nearly 16 months after the deadline for amendment of pleadings passed.  *See* [*id.*].  This deficiency is notable given Judge Chung's denial of the Parties' previous request to extend the deadline based on a lack of good cause shown.  *See* [Doc. 117 at 1 ("While the parties seek to amend their deadline for joinder of parties and amendment of pleadings, this deadline expired months ago and the parties fail to provide sufficient good cause to provide a new deadline for it.")].  Plaintiffs concede this defect in their reply brief and assert, for the first time, that good cause exists to amend the Scheduling Order.  [Doc. 144 at 2–4].  But it is well-settled that courts usually do not entertain arguments raised for the first time in a reply brief, *see United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011), and Plaintiffs make no argument explaining why the Court should consider their belated argument at this juncture, *see* [Doc. 144].

A party's failure to address Rule 16(b) is alone a sufficient basis to deny a motion

5

to amend.  *See Husky Ventures*, 911 F.3d at 1020 (affirming denial of a motion to amend the scheduling order where the movant "made absolutely no arguments to show good cause for late amendment of the pleadings") (quotation omitted); *Cooper v. Colo. Dep't of Corr.*, No. 21-cv-02411-PAB-NYW, 2022 WL 2063229, at *4 (D. Colo. June 8, 2022) (collecting cases).  The Court could thus deny the Motion to Amend on this basis alone, without further analysis.

Even if the Court were to consider Plaintiffs' new argument (or construe Plaintiff's "undue delay" argument as a good cause argument), the Court would nevertheless conclude that Plaintiffs have not demonstrated good cause to amend the Scheduling Order.  Plaintiffs contend that good cause exists because they "had no notice that they were required to correct pleading deficiencies identified by this Court to assert meritorious intentional interference claims until this Court's June 13, 2025 MTD Order, which was issued nearly eight months after the Scheduling Order deadline had already lapsed." [Doc. 144 at 2].  However, "Plaintiffs are not entitled to a directive from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."  *Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) (quotation omitted).  And the Tenth Circuit has suggested that even the filing of a motion to dismiss— let alone an adverse ruling on such motion—does not permit untimely amendment because "[t]he requirements for surviving a motion to dismiss are matters of hornbook civil procedure law, and a party should always ask itself whether the complaint it wants to file sets out a viable claim."  *Husky Ventures*, 911 F.3d at 1022 (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)).

Moreover, Plaintiffs do not explain why they waited eight months *after* this Court's

6

order dismissing their intentional interference claims to seek leave to amend.  Contrary to Plaintiffs' position that Defendant's "arguments regarding Plaintiffs' purported lack of diligence in amending after this Court's MTD Order are legally irrelevant," [Doc. 144 at 3], Plaintiffs' delay in seeking amendment is highly relevant to the Court's analysis, *see Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-cv-04095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020) (to establish good cause, the movant "must also show it acted diligently in moving to amend once it learned of . . . new information" necessitating amendment); *Gary G. v. United Healthcare*, No. 2:17-cv-00413-DN-DAO, 2021 WL 778578, at *1 (D. Utah Mar. 1, 2021) ("[T]he moving party must show good cause for failing to move to amend prior to the cutoff date *and* for the length of time between learning of the new information warranting amendment and moving to amend." (quotation omitted)).  And while Plaintiffs assert that their requested amendments are based on information learned "during discovery," [Doc. 138 at 7], they do not identify the specific time at which they learned the new information giving rise to their proposed amendments, *see generally* [*id.*]; *see also* [Doc. 144; Doc. 144-1 at ¶¶ 3–9 (identifying numerous dates on which Defendant produced discovery, but not identifying which productions contained the information contained in the proposed amendments)]; *Bauer v. Crete Carriers Corp.*, No. 18-cv-01536-PAB-SKC, 2019 WL 7290939, at *5 (D. Colo. Nov. 1, 2019) (finding that moving parties did not demonstrate good cause for late amendment when they did not "elucidate on what it is they learned or when.").

For all of these reasons, Plaintiffs have not met their burden to establish good cause to amend the Scheduling Order, and the Court need not reach the Parties' arguments under Rule 15.  *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [the

movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so."). The Motion to Amend is respectfully **DENIED**.

## II.      The Motion to Dismiss

Plaintiffs move to dismiss Defendant's abuse of process counterclaim under Rule 12(b)(6). [Doc. 127]. "The tort of abuse of process was developed to provide a remedy for the filing of what could be otherwise meritorious legal actions that are then manipulated to achieve an improper advantage unrelated to the substance of the actions filed." *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210, 213 (Colo. App. 2017). An abuse of process claim addresses "misuse of and access to courts," not a party's malicious intent in filing a lawsuit. *Id.*; s*ee also Mintz v. Accident & Inj. Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010) (discussing distinction between an abuse of process claim and a malicious prosecution claim), *aff'd*, 279 P.3d 658 (Colo. 2012). To state a plausible claim, the claimant must allege facts establishing "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998). Plaintiffs contend that Defendant fails to allege facts establishing the first two elements. [Doc. 127 at 3].

### A.      Ulterior Purpose

"An ulterior purpose is one that the legal proceeding was not designed to accomplish." *Gustafson v. Am. Fam. Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012). Ms. O'Hara-Rusckowski alleges that Plaintiffs "had at least three ulterior purposes

for filing this lawsuit":

a)      To threaten, intimidate, discredit, and retaliate against Ms. O'Hara-Rusckowski for acting as a witness against them in an active federal criminal investigation and in the Denver Archdiocese's now-complete ecclesiastical investigation;

b)      To publicly air their grievances against the non-party Denver Archdiocese; and

c)      To publicly denigrate Ms. O'Hara-Rusckowski and gain publicity and improve their standing with the Catholic faith-based and charitable communities to whom they disseminated the lawsuit.

[Doc. 122 at ¶ 247].  Plaintiffs argue that none of these purported ulterior purposes are sufficient to state a claim.  [Doc. 127 at 9–12].[2]  The Court finds that the first alleged improper purpose is sufficient to plausibly establish the first element of Defendant's abuse of process counterclaim and limits its analysis accordingly.

Ms. O'Hara-Rusckowski alleges that Plaintiffs' claims against her were asserted to threaten, intimidate, discredit, and retaliate against her "for acting as a witness" in the federal criminal investigation.  [Doc. 122 at ¶ 247]; *see also* [*id.* at ¶ 174].  She asserts that Plaintiffs "are aware of the criminal investigation, that Ms. O'Hara-Rusckowski is an important witness [in the investigation], and presumably that she has cooperated with the government."  [*Id.* at ¶ 173].  She also alleges that this lawsuit was filed "at the same time that the federal government's investigation was becoming active" and, based on

---

[2] Specifically, Plaintiffs contend that "[t]o be actionable for an abuse of process claim, a litigant's ulterior purpose for filing and prosecuting a lawsuit must have no legitimate correlation to the lawsuit's causes of action."  [Doc. 127 at 3 (citing *Mintz,* 284 P.3d at 66); *id.* at 10]; *see also* [Doc. 130 at 2 (citing *Active Release Techniques*, 413 P.3d at 213)].  Support for this "no legitimate correlation" statement is not found in any of the cases cited by Plaintiffs, and the Court could locate no clear support for this proposition in its own independent research.  The Court declines to recognize such a requirement without clear authority from Colorado courts.

information and belief, at the same time that federal investigators were "actively putting witnesses into the grand jury to testify." [*Id.* at ¶ 198]. These allegations are sufficient to plausibly allege that Plaintiffs brought this case for the improper purpose of harassing Defendant, intimidating her, or retaliating against her. *See Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011) (recognizing that allegation that the plaintiff brought claims "to harass, embarrass, damage, [and] burden" the defendants was relevant to "improper purpose" element); *LPS Prop. Tax Sols., Inc. v. Workplace Techs., LLC*, No. 11-cv-01571-WYD-KMT, 2011 WL 5419721, at *1, *3 (D. Colo. Nov. 9, 2011) (allegations that the plaintiff filed the lawsuit to "malign and damage the reputation of" the defendants and to "retaliate against and punish" the defendants were sufficient "to support a claim for abuse of process"); *cf. Palmer v. Diaz*, 214 P.3d 546, 551 (Colo. App. 2009) (affirming judgment on abuse of process claim based on the plaintiff's use of judicial process "for the ulterior purpose of retaliation for defendants' cooperation in [a] federal investigation"). Because the above allegations satisfy the first element of the counterclaim, the Court need not address Plaintiffs' arguments attacking Defendant's other theories of relief. *See* [Doc. 127 at 11–12].

### B. Improper Use of the Legal Proceedings

Plaintiffs also argue that Ms. O'Hara-Rusckowski "has failed to allege an actionable improper use" of a judicial process by Plaintiffs, the second element of an abuse of process claim. [Doc. 127 at 12 (emphasis omitted)]. This element requires allegations establishing "a willful act by the defendant in using the process that is not proper in the proceeding's regular course." *Mintz*, 284 P.3d at 66; *see also Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009) ("Use of a legal proceeding in an

improper *manner* is an essential element of an abuse of process claim." (quotation omitted)). "An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson*, 901 F. Supp. 2d at 1305. For example, a party's use of a replevin action to demand money—rather than to regain property—is an improper use of the legal proceedings because a monetary demand is not contemplated in the regular course of replevin proceedings. *See Aztec Sound Corp. v. W. States Leasing Co.*, 510 P.2d 897, 899–900 (Colo. App. 1973). Similarly, a Colorado appellate court found there was sufficient evidence to support the "improper use" element where a claimant who had no interest in property filed a notice of lis pendens with respect to that property. *See Salstrom v. Starke*, 670 P.2d 809, 811 (Colo. App. 1983) ("Without a contract, Salstrom and Gruenwald had no interest to protect by filing the lis pendens notice."); *see also Coulter v. Coulter*, 214 P. 400, 403 (Colo. 1923) (abuse of process claim based on initiating a lawsuit "upon a false affidavit").

Importantly, "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Restatement (Second) of Torts § 682 cmt. b (A.L.I. 1977, Sept. 2025 update); *accord Mintz*, 284 P.3d at 66. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint [then] there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *Sterenbuch*, 266 P.3d at 439 (quotation omitted); *see also Mintz*, 284 P.3d at 66 ("[T]he filing of a justified lawsuit cannot constitute the act necessary to sustain an abuse of process claim, even if the suit

11

was filed for an ulterior purpose.").  In reviewing this element, "[t]he Court applies an objective standard and 'looks to the nominal purpose for which the process is invoked.'" *Farm Credit Leasing Servs. Corp. v. Good Forage, LLC*, No. 23-cv-03415-GPG-CYC, 2025 WL 836425, at *2 (D. Colo. Jan. 28, 2025) (quoting *Partminer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *3 (D. Colo. Feb. 10, 2010)).

Ms. O'Hara-Rusckowski contends that she has put forth sufficient allegations that Plaintiffs have "willfully misused this lawsuit."  [Doc. 129 at 12].  First, she argues that she has plausibly alleged that Plaintiffs are "using this lawsuit to attack and obtain discovery for its dispute with the" Archdiocese of Denver, a non-party to this case, and to "advance [Plaintiffs'] position against the Archdiocese."  [*Id.*].  However, the allegations she cites in support allege only that Plaintiffs filed this lawsuit to "publicly assert their grievances" against the Archdiocese, not to gain any sort of advantage (or obtain discovery) in a third-party dispute.  *See* [Doc. 122 at ¶¶ 201–04].

Moreover, this argument improperly conflates an alleged improper *purpose* in filing the lawsuit with improper *use* of the legal process.  Defendant has not pointed to allegations establishing the latter, which is what the second element requires. Defendant's reliance on her allegations that Plaintiff is using this lawsuit "to harass, intimidate, retaliate against, and discredit her as a witness," *see* [Doc. 129 at 13], suffers from this same flaw, *see Sterenbuch*, 266 P.3d at 439 (allegations that the plaintiff used his lawsuit to harass, embarrass, and burden the defendants "[did] not refer to an improper use of process, but rather, to improper purposes in bringing the action," and improper motive alone is insufficient to satisfy second element); *Parks v. Edward Dale*

*Parrish LLC*, 452 P.3d 141, 145 (Colo. App. 2019) (allegations that the plaintiff filed a malpractice action against former attorneys to coerce the attorneys into lowering their requested fees did not demonstrate "an improper *use* of the legal system" because a "regular and legitimate function of a malpractice action is to contest attorney fees claimed by the attorney alleged to have committed malpractice"); *Cross Creek Ranch, LLC v. Crotts*, No. 23-cv-00050-RM-JPO, 2024 WL 1156601, at *4 (D. Colo. Mar. 18, 2024) (allegations that plaintiffs filed suit to "intimidate [the defendant] and deter him from pursuing his wage claims" alleged an improper motive, but failed to establish the use of the judicial process in an improper manner).[3]

Defendant also argues that she has alleged improper use of the legal process based on her allegations that Plaintiffs "immediately and widely disseminated [their] lawsuit to the Archdiocese, the Catholic news media, and others in [Ms. O'Hara-

---

[3] In arguing that she plausibly alleged the second element, Defendant attempts to analogize this case with *Palmer v. Diaz*. She argues that, in *Palmer*, "[t]he court upheld the jury's abuse of process verdict, rejecting [the plaintiff's] argument that 'the evidence failed to establish that the act of filing [the] lawsuit constituted a prohibited, or an unlawful, act of retaliation." [Doc. 129 at 13–14 (quoting *Palmer*, 214 P.3d at 551)]. This statement is not accurate. In *Palmer*, the parties had agreed to a jury instruction at trial that incorporated the Colorado criminal retaliation statute "because [the] claim[] for abuse of process [was] based on the allegation that [the plaintiff] filed [the] lawsuit solely for retaliatory purposes." 214 P.3d at 551. On appeal, the plaintiff argued that (1) the instruction was erroneous; and (2) there was insufficient evidence that his filing of the lawsuit "constituted a prohibited, or an unlawful, act of retaliation pursuant to [the Colorado criminal retaliation statute]." *Id.* But the Colorado Court of Appeals *expressly declined* to consider the plaintiff's argument because he did not object to the jury instructions at trial. *See id.* ("[B]ecause Palmer did not object to the jury instructions at trial, and in fact agreed to the jury instructions, we decline to address this new argument."). It is thus inaccurate to assert that the *Palmer* court "reject[ed]" the plaintiff's argument. [Doc. 129 at 14]. Moreover, and notably, the *Palmer* court did not expressly address the second element of an abuse of process claim at all. *See* 214 P.3d at 551 (concluding that the evidence supported the jury's verdict that the plaintiff "used the judicial proceedings for the *ulterior purpose* of retaliation," but not explicitly addressing the "willful action" or "improper use" element (emphasis added)).

13

Rusckowski's] network in order to tell its side of the Archdiocese story" and to "chill the participation of" witnesses in the federal investigation. [Doc. 129 at 12–13]; *see also* [Doc. 122 at ¶ 256]. But generally, there is a presumption that court records and documents are available to the public, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), and Defendant does not rebut that presumption here.[4] Furthermore, Defendant's argument is not supported by any meaningful argument or legal authority establishing that the alleged "dissemination" of a lawsuit amounts to improper use *of the legal process*. *See* [Doc. 129 at 12–13]; *see also Active Release Techniques*, 413 P.3d at 213 (an abuse of process claim requires proof "of improper use of specific court processes" (quoting *Weinstein v. Leonard*, 134 A.3d 547, 556 (Vt. 2015))); *see also id.* at 213–14 (concluding that plaintiff's action of sending preservation letters to individuals "not directly involved in the litigation" could not support an abuse of process claim because "sending [the letters] was an action taken outside the scope of any legal proceeding").

"[I]f a party files claims that are colorable on their face, and requests relief consistent with the claims alleged, there is no abuse of process, even if the claims are factually baseless." *Roberts v. Benson*, No. 21-cv-03029-CMA-NRN, 2023 WL 2569872, at *4 (D. Colo. Mar. 20, 2023) (quotation omitted)), *report and recommendation adopted*, 2023 WL 2813273 (D. Colo. Apr. 5, 2023). Because Plaintiffs assert colorable claims seeking "all applicable damages . . ., including but not limited to economic and

---

[4] The *Nixon* Court observed that the right of access to judicial records is not absolute, and bows before the Court's power to "insure that its records are not used to gratify private spite or promote public scandal." *Nixon*, 435 U.S. at 598 (quotation omitted). But this Court notes that the Joint Protective Order entered in this case deals only with discovery and does not restrict the dissemination of the filings in this action, [Doc. 109], and Defendant has not moved to restrict any particular allegations or documents.

noneconomic damages, special damages, attorneys' fees, costs, expenses, and interest," [Doc. 72 at 34], it is "clear that [Plaintiffs] pursued [their] lawsuit to accomplish a result available in the litigation," *Gustafson*, 901 F. Supp. 2d at 1306 (granting summary judgment on abuse of process claim where the defendant's requested relief was consistent with its claims and the plaintiff could not show that the defendant "used legal means improperly"); *Cross Creek Ranch*, 2024 WL 1156601, at *4 (granting motion to dismiss abuse of process counterclaim where the plaintiffs sought relief that was consistent with their claims); *Parks*, 452 P.3d at 145 ("[B]ringing a . . . case and carrying it to its natural end to obtain a result such an action is designed to achieve doesn't constitute an improper use of process, no matter the motive.").

Ms. O'Hara-Rusckowski has not plausibly alleged the "improper use" element and has not stated a plausible abuse of process counterclaim. The Motion to Dismiss is respectfully **GRANTED**. Defendant's abuse of process counterclaim is **DISMISSED without prejudice** for failure to state a claim under Rule 12(b)(6).[5]

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     Plaintiffs'-Counterclaim Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 127] is **GRANTED**;

(2)     Defendant's abuse of process counterclaim is **DISMISSED without prejudice**; and

---

[5] Plaintiffs request that the abuse of process counterclaim be dismissed with prejudice because "[i]t is a legally deficient claim." [Doc. 127 at 16]. This argument is insufficient to demonstrate that dismissal with prejudice is warranted because amendment would be futile.

(3)     Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. 138]

is **DENIED**.


DATED:  May 15, 2026                    BY THE COURT:

_____

Nina Y. Wang
United States District Judge

16